363 So.2d 1235 (1978)
John EUDY
v.
JEFFERSON PARISH COUNCIL and Alwynn J. Cronvich, Sheriff, Parish of Jefferson.
No. 9306.
Court of Appeal of Louisiana, Fourth Circuit.
October 10, 1978.
*1236 George P. Vedros, Gretna, for plaintiff-appellant.
Harry Lee, Parish Atty., Pierre F. Gaudin, Asst. Parish Atty., Gretna, for defendants-appellees.
Before REDMANN, LEMMON and BOUTALL, JJ.
LEMMON, Judge.
Plaintiff filed this action to enjoin the enforcement of an ordinance rescinding his permit to sell shrimp from his truck in a supermarket parking lot. The trial court, after a hearing, denied the requested relief, and plaintiff appealed.
At the time of the August, 1977 trial plaintiff had been selling shrimp at this location for over two years. When he started in this occupation, he obtained an occupational license and periodically obtained a six-month permit from the local unit of the state health agency. In December, 1975 the Parish Council adopted an ordinance requiring Council approval for the sale of seafood from a vehicle, and plaintiff obtained such approval by ordinance adopted the following month.
In about March of 1977 the state health agency studied the problem of controlling the influx of persons who wanted to sell seafood from trucks, especially during the height of the shrimp season. Because seafood is highly dangerous on account of the high percentage of breakdown from bacteria, and because the agency loses control and supervision of the articles when an itinerant operation closes at night and the *1237 vendor brings the unsold seafood home, the assistant chief sanitarian issued an order that permits would no longer be granted to anyone to sell seafood from vehicles.[1] Thus, when plaintiff's six-month health permit (that had been issued on December 30, 1976) expired on June 30, 1977, agency policy prohibited issuance of another permit.[2]
Also around March, 1977 the Councilman for plaintiff's district, in the face of a mounting number of requests, established a policy to recommend denial of all requests for permits to sell seafood from trucks, because of public health considerations and difficulty of control. The Councilman contacted plaintiff and yielded to plaintiff's request to be allowed to sell shrimp through May 15, but when plaintiff continued sales thereafter, the Council adopted the June 30 ordinance revoking his permit, which was the only one still in existence at that time.
Ordinances prohibiting the sale of seafood on the streets have generally been upheld as a reasonable exercise of a county's or municipality's police power, having a substantial relationship to public health and safety. See 14 A.L.R.3d 896 (1967). The ordinance in this case involves a reasonable classification and meets constitutional standards.
Plaintiff's main complaint is that he was initially granted a permit which was revoked without notice or hearing.
The issuance of a permit to plaintiff gave him no vested right to continue in business forever. When circumstances changed so that the number of persons requesting a peddler's permit made supervision and control difficult so as to endanger public health, the Council and the health agency reasonably decided to prohibit all such sales. The revocation of plaintiff's permit did not deny him equal protection, but rather was a necessary step to insure uniform administration and constitutional application of a valid ordinance.
As of the time of trial, itinerant permits were no longer being issued to sell seafood from trucks, and plaintiff did not meet the mechanical refrigeration, storage, screens, toilet facilities and other requirements to qualify for a permit for seafood sales from a permanent location. The suit was properly dismissed.
AFFIRMED.
NOTES
[1] The sanitarian testified as follows:

THE WITNESS:
"The danger in selling shrimp from a truck, when a permit is given to sell, is the number of hours that they sell shrimp and then they close up shop at approximately 7:00 o'clock and we lose control over the product. We don't know where or what happens to the product. In a seafood market, we have a right to go into the market for inspection in the middle of the day or night to investigate what happens to the seafood. We have a right to seize the product and destroy it. In the case of a seafood vendor, we lose control of the product where he is selling the item and then brings it home after he closes up, and we have no control. We can't go into his home and seize that product and destroy the product. Therefore, we don't know what happens to the product after they leave the site that they were selling from and he comes back to the same site the next day and resells the product."
THE COURT:
"What you're saying is that your testimony is that you are no longer granting health permits to anyone selling seafood from a truck or a place that is not a permanent establishment, is that right?"
THE WITNESS:
"Yes, sir."
THE COURT:
"That is your policy now?"
THE WITNESS:
"Yes, sir, that is my policy as of March."
[2] Actually, another permit was issued by mistake around June 30, but was revoked shortly thereafter. The evidence established conclusively that no such permits were issued to other peddlers after the March order.