**Jess STOCKTON et al., Appellants,**

**v.**

**PARKS AND WILDLIFE COMMISSION of the State of Texas, Appellee.**

No. 12756.

Court of Civil Appeals of Texas, Austin.

Aug. 9, 1978.

vember of 1977 against the Parks and Wildlife Commission for declaratory judgment to set aside a proclamation of the Commission, prohibiting fishing with trotlines in certain coastal waters on weekends, and to enjoin enforcement of the regulation. Plaintiffs below, now appellants, are commercial fishermen who utilize trotlines in catching red drum fish for the market.

The trial court upon hearing concluded that plaintiffs were not entitled to a temporary injunction and denied plaintiffs' prayer for declaratory judgment. Appellants bring eight points of error which raise three principal issues. We will overrule all points of error and affirm judgment of the trial court.

The proclamation of the Parks and Wildlife Commission under attack in this lawsuit was adopted by the Commission on October 18, 1977, and became effective on November 11, 1977. As stated in the proclamation, the Commission amended two rules pertaining to fishing in coastal waters, the rules having particular reference to use of trammel nets, gill nets, and drag seines under certain circumstances in certain waters, and the use of a "trotline or trotline components" for fishing at certain times.

Both Rules 127.70.01.137 and .173 were amended, but the controversy in this action arose principally from the amendatory provision in .137(3)(E) that "No trotline or trotline components, including lines and hooks, but excluding poles, *may be left* in or on coastal waters between the hours of *1 p.m. on Friday through 1 p.m. on Sunday* of each week . . ." (Emphasis added). As commercial fishermen, relying extensively on use of trotlines, plaintiffs below complained that the rules as amended would ". . . force Plaintiffs and others in their position completely out of business."

As already indicated, the points of error brought by appellants pose three principal issues. Under the *first* such issue the questions are: (1) whether the Commission "ignored the statutory limits of its discretion," (2) whether the "Legislature has preempted [*sic*] the Commission" [rather, the *field* or

---

Jimmy Stewart, Michael F. Lynch, Gray B. Jolink, Lynch, Jolink, Zimmerman & Young, Austin, for appellants.

John L. Hill, Atty. Gen., W. Thomas Buckle, Asst. Atty. Gen., Austin, for appellee.

O'QUINN, Justice.

Jess Stockton and Steve Stockton, residents of Willacy County, joined by ninety-nine citizens of Nueces, Willacy, and Cameron Counties, brought this lawsuit in No-

*subject* being regulated], rendering further regulation "inconsistent with existing Legislation," and (3) whether under strict construction the amended rules require appellants to "remove all their equipment from the surface of the water" during the prohibited hours from Friday to Sunday. These questions directly pertain to authority of the Commission in adopting the amended regulations and in enforcing them.

Under the Parks and Wildlife Code, adopted by the Legislature in 1975, the Commission is authorized and directed to state its regulation of "the taking of wildlife resources" by proclamations. (Sec. 61.-054). Under Section 61.055 the Commission is empowered to amend and revoke its regulations:

"(a) If the *commission finds that there is a danger of depletion or waste,* it *shall* amend or revoke its proclamations *to prevent the depletion or waste* and to provide to the people the most equitable and reasonable privilege to pursue, take, and kill wildlife resources.

"(b) The commission may amend or revoke its proclamations at any time it finds the facts warrant a change." (Emphasis added).

Appellants argue that the Legislature preempted the field of regulating the commercial taking of red drum, or "redfish" as they are commonly called, in the 1977 amendment of the Uniform Wildlife Regulatory Act. The argument advanced is that by the amendments of 1977 the Legislature took action "which will be undeniably effective *in conserving* red fish in the state," and further action of the Commission would not become useful or needed.

■ It would appear that the Legislature thought otherwise. In the amendatory Act itself the Legislature specifically directed the Commission to continue its regulation of "the taking of wildlife resources," as pointed out earlier under Section 61.055 of the Code, when in the 1977 Act the Legislature specified:

"*Proclamations: Red Drum*

The commission *shall provide* for the means, manner, and methods for taking red drum for sale, *the times and places for taking red drum* for sale, and the maximum individual and collective retention limits for the taking of red drum for sale." (Emphasis added). Sec. 61.064, Acts 1977, 65th Leg., ch. 270, p. 722, sec. 6, at p. 723.

In Section 61.063, immediately preceding the section set out above, the Legislature prescribed that "No person may catch red drum for sale: (1) in excess of the harvest *limits set by the commission* under this chapter; (2) by a *method or means* not permitted by the *regulations of the commission* issued under this chapter; or (3) at a *time or a place* prohibited by a *regulation of the commission* under this chapter." (Emphasis added).

The argument advanced by appellants that the field of control over red drum fishing has been preempted by the Legislature is without support by reason of the language found in the Acts of the Legislature itself. To say that the Legislature has preempted the field necessarily would indicate a complete take-over, to the exclusion of all interference, since preemption would preclude any invasion, as in this case, by the Commission.

It is manifest from the statutes found in the Parks and Wildlife Code, and particularly in the Uniform Wildlife Regulatory Act as amended in 1977, that the Legislature not only did not propose to preempt the field to the exclusion of the Commission, but instead delegated to the Commission responsibilities, duties, and powers by which the Legislative body, in the exercise of foresight gained from past experience, made of the Commission a working partner in protecting and conserving the wildlife resources of the state.

■ The main thrust of appellants' attack on the Commission's exercise of discretion in formulating its order appears to be hinged upon the concluding clause of Section 61.055(a). Under the statute, if the Commission finds there is danger of depletion or waste, the Commission is directed to shape its proclamations to "prevent the de-

pletion or waste *and to provide to the people the most equitable and reasonable privilege* to pursue, take, and kill wildlife resources." (Emphasis added). Appellants argue that under the latter clause the Commission "is required to balance competing interests" and "must temper its fervor" by considering the effect of an order "on citizens such as Appellants."

The record shows that before issuing its order, the Commission considered several alternative approaches, including a formal alternative plan filed in behalf of appellants, and had before it evidence that the physical burden of removing and replacing trotlines on weekends would in no manner exert a destructive influence on commercial fishing. The Commission also considered evidence that the reduction in take of red drum, due to the regulation prohibiting trotlines on weekends, would result in minimal decrease, if any, of income realized by commercial fishermen.

The Legislature in the "red drum" Act of 1977 specified certain periods, including weekends, when "nets, seines, and saltwater trotlines" may not be used in the counties of Chambers, Galveston, and Harris. The weekends are described as "from sunset Friday to sunset Sunday of each week." Arts. 136.048, 184.025, and 201.016 (Acts 1977, 65th Leg., p. 720, ch. 270, at pp. 724–5). The Commission followed the pattern set by the Legislature in limiting fishing on weekends, except that the Commission specified hours of the day for beginning and end of the period instead of the sunset.

We conclude that the Commission did not exceed the limits of discretion prescribed by statute but on the contrary acted well within the limits designated by Article 61.055(a).

■ Finally, in their attack upon authority of the Commission, appellants insist that the provision of the order that no trotlines "may be *left in or on* the coastal waters" during the weekend is invalid, but that in the alternative the phrase should be "construed so as not to require Appellants to remove their equipment from above the surface of the water." We find the order clear and without ambiguity in requiring all fishermen to remove their trotline components, including lines and hooks, but not including poles, for the weekend. In its legislative judgment the Commission may have prescribed removal as a valid means of enforcing the order and making effective its provisions.

The contentions made by appellants under points one, five and six have been examined and found without merit, and the points of error are overruled.

Under the second principal issue in this cause appellants urge that (1) the Commission materially amended its proclamation, as initially published, without notice to the public before final action, in violation of the Administrative Procedure Act, and (2) the trial court erred in not considering this lawsuit a "contested case" and in failing to conduct a trial *de novo* as required by the Administrative Procedure Act.

■ As initially published in the Texas Register the proposed proclamation recited "No trotline *material* including lines and hooks, but excluding poles, may be *used* in or on coastal waters . . ." As finally adopted, the proclamation recited, "No trotline *or trotline component,* including lines and hooks, but excluding poles, may be *left* in or on coastal waters . . ." (Emphasis added in both quotations). The Commission, in its final order pointed out these minor changes and stated, "The wording changes are for clarification."

We regard these changes as being within the legislative wisdom of the Commission and not material to the ultimate effect of regulating red drum fishing on weekends, except perhaps in aid of efficient enforcement. Under either wording, it is clear that red drum fishing with trotlines, within the days and hours later stated, was prohibited by the Commission order. The changes made and the procedure followed by the Commission did not violate the "procedure for adoption of rules" prescribed by Section 5 of Article 6252–13a, V.A.T.S. (Administrative Procedure and Texas Register Act).

# 342

■ Appellants urge that this suit involves a contested case within the scope of Section 3(2) of Article 6252–13a which defines a "contested case" as " . . . a proceeding, including but not restricted to ratemaking and licensing, in which the legal rights, duties, or privileges of a party are to be determined by an agency after an opportunity for adjudicative hearing." Appellants argue that the Commission determined legal rights, duties, and privileges when the order of October 18, 1977 was issued, and that this occurred after the parties had opportunity for "adjudicative hearing" at public hearings in counties to be affected ultimately by the proclamation.

In bringing suit, appellants invoked the provisions of Section 12 of Article 6252–13a, under which a district court of Travis County may enter a declaratory judgment on validity or applicability of rules. Appellants pleaded that the amendment of rules by the Commission "is invalid because it was not supported by substantial evidence."

The parties apparently are not in disagreement that the proclamation challenged in this suit is a "rule" within the definition stated in Section 3(7) of the Administrative Procedure Act, and that suit properly was brought under Section 12 of the Act which limits venue to Travis County and permits final adjudication in trial court to be by declaratory judgment. The trial court in this suit conducted the judicial review as a trial *de novo* in the sense that evidence in support of the Commission rule and in opposition was introduced by the parties *de novo.*

The trial court found this not to be a "contested case" within the meaning of the Administrative Procedure Act and " . . . therefore, Section 19 of this Act [Article 6252–13a] does not establish the judicial review for this case." The trial court also found: "This case is a judicial review of a 'rule' as defined in Section 3(7) . . . [of Article 6252–13a] and judicial review under Section 12 of the Act is proper." The trial court concluded there was substantial evidence at the time the Commission adopted its order to support the

proclamation, and that if the scope of review was "under the preponderance of evidence rule, which is not the finding of this Court, there was a preponderance of the evidence, under the evidence presented to the Court to support the rule as promulgated."

Appellants contend that the trial court's review should have been as in a "contested case," in which the court would have considered only evidence in the Commission record in reaching a decision, and further that "preponderance of the evidence" should have been the applicable standard of review.

We conclude that this suit constitutes a test of a rule adopted by the Commission and properly was conducted by the trial court under Section 12 authorizing declaratory judgment on validity or applicability of a rule. It is undisputed that the amended rules adopted October 18, 1977, applied to the entire coastal waters of Texas in those counties where the Commission has statutory authority to regulate the taking of saltwater fish. The regulation has general application in that it applies to all persons fishing in those coastal waters, whether the persons be licensed commercial fishermen or licensed sports fishermen. The amended rules pertain to "the means or method that may be used to take the wildlife resources," pursuant to the Commission's general authority granted in Article 61.054 of the Parks and Wildlife Code. The trial court correctly reviewed the rules as to validity or applicability, and points of error seven and eight are overruled.

Under the third principal issue in this case, generated from appellants' second, third, and fourth points of error, due process, abridgment of privileges and immunities, and equal protection are the subjects for review under the facts.

■ In disposing of this issue, it is appropriate to review from the record the conservation facts which precipitated the Commission's investigation and hearings which resulted in the rules amendments of October 18, 1977. The evidence before the Commission revealed an unsafe decline in red drum

population and indicated that a primary cause for the decline was the use of nets and trotlines. Trotlines and nets were found to be vastly superior types of fishing gear, compared to the rod and reel employed in general by the public.

The rules of the Commission prohibited on weekends the use of trotlines and required that they be taken out of the water, a requirement obviously directed at facilitating enforcement of the order. The rules apply to all fishermen, whether commercial or sports, in prohibition of trotlines. The reach of trotline fishing, as opposed to rod and reel, is shown by the fact that one fisherman they control as many as 1,400 hooks on trotlines at one time, whereas other methods of taking fish by rod and reel would account for only a fractional part of that number. The record shows that seventy-five percent of red drum taken in the coastal waters are caught by nets and trotlines. Banning use of trotlines on weekends is reasonably calculated to reduce to some extent the total take of red drum.

Appellants' occupational rights are not immune from reasonable regulation, and in this case the regulation is part of the state's undisputed police power to protect and conserve the state's wildlife resources. The commercial fishermen in this cause have failed to show more than minimal injury and inconvenience, or that they have been placed in a class aside from any other type or group of persons pursuing the business or pleasure of fishing. The rules are designed simply to prevent any person from using trotlines on weekends while fishing in the coastal waters. Appellants have failed to show a reasonable basis in fact to establish discrimination between commercial fishermen and any other fishermen.

We overrule the points of error under which appellants claim they have been denied due process and equal protection, and have suffered abridgment of their privileges and immunities. We hold that appellants, under this record, simply have failed to establish these claims.

The Commission presents by crosspoint claimed error of the trial court in refusing to admit the testimony of an expert in community and regional planning, by which the Commission sought to rebut testimony offered by appellants to show economic impact of the rules on commercial fishing. In view of the disposition we make of this appeal, we find it unnecessary to pass on the crosspoint and therefore do not decide the question presented.

The judgment of the trial court refusing appellants a temporary injunction and denying their prayer for declaratory judgment is in all things affirmed.