FLORA S. NAGLE for herself and on behalf of all others similarly situated, Plaintiffs-Appellants, and THE HAWAII STATE TEACHERS ASSOCIATION, Plaintiff-Intervenor-Appellant, *v.* THE BOARD OF EDUCATION and THE DEPARTMENT OF EDUCATION, STATE OF HAWAII, Defendants-Appellees

NO. 6499

CIVIL NO. 50088

JUNE 8, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

390

OPINION OF THE COURT BY RICHARDSON, C.J.

The primary issue on this appeal is whether HRS § 297-15 (1976) which mandates the retirement of public school teachers at age 65 violates the equal protection and due process clauses of the Hawaii Constitution, art. I, § 4 (as amended and renumbered art. I, § 5 (1978) ).[1] The First Circuit Court upheld the constitutionality of

---

[1] Section 297-15 states in relevant part:

**Age limit.** No teacher or educational officer in the department of education who has attained the age of sixty-five years shall be employed by the department of education, whether by appointment or contract, except when no qualified person is available and then only under contract for periods not to exceed one year at a time. No teacher or educational officer who has attained the age of seventy years shall be on appointment or contract.

Moreover, art. I, § 5 reads as follows:

No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

section 297-15 and granted the defendants' motion for summary judgment. For reasons which will be set forth in this opinion, we affirm the decision of the trial court.

## I. FACTS.

Flora S. Nagle (hereinafter "appellant") was an employee of the Board of Education and the State Department of Education (hereinafter "appellees"). She worked as an eighth grade teacher at Aliamanu Intermediate School. Appellant first began working as a school teacher at the beginning of September, 1958 and reached the age of 65 on December 8, 1976. Prior to attaining the age of 65, she requested permission to continue teaching. However, appellant's request was denied by the appellees under section 297-15, the mandatory retirement provision for public school instructors.

Following the denial of her request, appellant filed a complaint against appellees and a motion for a preliminary injunction on December 2, 1976. In her suit, appellant argued that section 297-15 violated the equal protection and due process clauses of the Hawaii Constitution. She contended that the mandatory retirement law created an impermissible age-based classification, impinged upon her fundamental right to work, and established an unconstitutional irrebuttable presumption.

On January 7, 1977, the appellees filed a motion for summary judgment. On January 25, 1977, the trial court held a hearing on appellees' motion for summary judgment and a counter-motion for summary judgment filed by appellant. Moreover, an order was issued on January 28, 1977, permitting co-appellant Hawaii State Teachers Association to intervene in the case.

On February 3, 1977, the trial court granted the appellees' motion for summary judgment. Thereupon, the appellants filed a notice of appeal.

## II. DISCUSSION.

The appellants raise several points in challenging the constitutionality of section 297-15. First, the appellants argue that section 297-15 creates a suspect age classification in the absence of compelling state interests and, therefore, violates the equal protection clause of the Hawaii Constitution. In the alternative, appellants

argue that even if section 297-15 does not establish a suspect classification, it is still constitutionally invalid under the equal protection clause because the statute is not rationally related to legitimate state interests. Second, appellants also contend that the statute is unconstitutional because it impinges on a fundamental right to earn a living. Lastly, appellants assert that section 297-15 contravenes the due process clause of the Hawaii Constitution because the statute sets up an irrebuttable presumption that 65-year-old teachers are unfit and incompetent to continue teaching. We will examine each of these arguments in order.

## A. THE CONSTITUTIONALITY OF SECTION 297-15 AS AN AGE-BASED CLASSIFICATION.

As in all cases involving equal protection challenges, this court must decide on the appropriate standard for reviewing the constitutionality of section 297-15. Where equal protection claims are raised, this court has recognized either the strict scrutiny or the rational basis tests as the basic standards of review. *Nachtwey v. Doi*, 59 Haw. 430, 583 P.2d 955 (1978).

Under the strict scrutiny standard, the State carries a heavy burden in arguing for the validity of a statute. *Id.* at 435, 583 P.2d at 959 (1978). A court will carefully examine a statute to determine whether it furthers compelling state interests and is narrowly drawn to avoid unnecessary abridgment of constitutional rights. *Id.* at 435, 583 P.2d at 959 (1978). As a standard for judicial review, the strict scrutiny test is applicable where equal protection challenges involve "suspect" classifications[2] or fundamental rights.[3]

---

[2] *Korematsu v. United States*, 323 U.S. 214 (1944) (race); *Graham v. Richardson*, 403 U.S. 365 (1971) (alienage).

A suspect classification exists where the class of individuals formed has been saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.

*San Antonio School District v. Rodriguez*, 411 U.S. 1, 28 (1973).

[3] *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right of interstate travel). A fundamental constitutional right is that "explicitly or implicitly guaranteed by the Constitution." *San Antonio School District v. Rodriguez, supra* at 33-34 (1973).

Where "suspect" classifications or fundamental rights are not at issue, this court has traditionally employed the rational basis test. *State v. Cotton,* 55 Haw. 148, 150, 516 P.2d 715, 717 (1973); *State v. Johnston,* 51 Haw. 195, 203, 456 P.2d 805, 810 (1969). Under that test, the court essentially asks whether a statute rationally furthers a legitimate state interest. *State v. Cotton, supra* at 150, 516 P.2d at 717 (1973). In making this inquiry, a court will not look for empirical data in support of the statute. It will only seek to determine whether any reasonable justification can be conceived to uphold the legislative enactment. *Vance v. Bradley,* 440 U.S. 93 (1979); *State v. Cotton, supra.*

Based on these principles of law, one of the factors which this court must consider in selecting a standard of review over a mandatory retirement statute is whether age per se is a suspect classification. In this regard, two recent United States Supreme Court cases dealing with age discrimination are instructive. In *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307 (1976), the Supreme Court held that age is not a suspect classification and, therefore, that the rational basis test is the appropriate standard where age discrimination is alleged. In *Murgia,* the Court reviewed the constitutionality of a Massachusetts statute which required that police officers retire at the age of 50. The appellee, Robert Murgia, was a Massachusetts state police officer who had been forced to retire by the Massachusetts Board of Retirement upon reaching his 50th birthday. He contended that the retirement statute which had formed the basis for the Board's decision violated the equal protection clause of the United States Constitution. In making this contention, Murgia urged the Court to adopt the strict scrutiny test, arguing that a statute which mandates the retirement of an employee at a particular age establishes a suspect classification and impinges upon a fundamental right to work.

The Supreme Court rejected Murgia's argument and upheld the constitutionality of the Massachusetts statute under the rational basis test. *Id.* at 312. The Court explained that the aged do not form a suspect class because they are not a politically powerless nor a historically disadvantaged minority group. *Id.* at 313. Since the elderly have considerable leverage within the political process to change policies which affect their interests, the Court pointed out that the aged do not require the sort of extraordinary judicial protection that

strict scrutiny affords. *Id.* at 313.

Furthermore, the Supreme Court concluded that the rational basis test was the correct standard because the drafting of statutes involves matters that fall within the expertise of the legislature and not the courts. The Court stated: "[T]he drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary." *Id.* at 314 citing *Dandridge v. Williams,* 397 U.S. 471, 485 (1970). Therefore, the Supreme Court reasoned that the judiciary should not overturn legislative enactments unless they are completely irrational. *Murgia, supra* at 314.

Following its *Murgia* decision, the Supreme Court reiterated its support for the rational basis test in age discrimination cases in *Vance v. Bradley, supra. Vance* involved a challenge to the constitutionality of a congressional statute which set the retirement age for foreign service employees at 60 as opposed to civil service employees who were allowed to retire at 70. As it had done in *Murgia,* the Court also upheld the statute under the rational basis test because it again decided that the aged do not fall within a suspect class. *Vance, supra* at 108-09 (1979).

In light of these recent Supreme Court cases, this court must now decide as a matter of Hawaii's constitutional law whether to follow these decisions in adopting a standard of review. Because we are persuaded by the Supreme Court's reasoning in *Murgia* and *Vance,* we hold that the principles of law enunciated in those cases are controlling in this jurisdiction. In other words, we conclude that the rational basis test is the proper standard of review where the constitutionality of any retirement statute is challenged.

This court reaches this result because we agree with the United States Supreme Court that age is not a suspect classification. As the Supreme Court recognized in *Murgia, supra* at 313-14, the aged are not in such a politically disadvantageous position that the judiciary must rigorously scrutinize every retirement statute. Here in Hawaii, the elderly have benefitted from the political process as the state legislature has passed statutes which provide special protections for the aged. *See* Hawaii's Executive Office on Aging, HRS § 349-1 (1976). Since the aged are neither a politically powerless nor a historically disadvantaged group in this state, we will not second guess the legislature's judgment about the appropriate retirement

age for public school teachers.

Furthermore, we agree with the Supreme Court's position that the judiciary should extend great deference to the expertise of the legislature in making public policy decisions about mandatory retirement. Except in cases involving suspect classifications or fundamental rights, we hold that this court must continue to exercise limited judicial review over matters within the prerogative of the legislature.

Because this court has decided to adopt the rational basis test in the instant case, we must now determine whether section 297-15 has a rational relationship to legitimate state interests. *State v. Cotton, supra; State v. Johnston, supra.* Appellees argue that section 297-15 is amply supported by valid state objectives. They argue that section 297-15 furthers a state interest in creating employment opportunities for young people by mandating the retirement of 65-year-old teachers. In addition, appellees point out that the statute advances state interests in maintaining student discipline and preserving the quality of instruction through the retirement of school teachers whose physical and intellectual skills generally decline with age. Finally, they contend that section 297-15 supports a state interest in administrative convenience.

On the other hand, appellants argue that even under the rational basis standard, the reasons offered by the appellees for retiring teachers at age 65 are untenable. They challenge the appellees' assertion that the effect of section 297-15 has been to create more employment opportunities for young people, citing the lack of empirical support for that proposition. In addition, the appellants contend that the goal of retiring 65-year-old teachers simply to make room for younger instructors is not a valid state interest because the effect of such a policy would be merely to displace one group of employees with another group of employees. They assert that the creation of a few jobs for young teachers does not justify the economic hardship which older instructors will experience through mandatory retirement. Moreover, appellants argue that the appellees are making an unreasonable assumption in taking the position that 65-year-old teachers are intellectually and physically incapable of handling the rigors of teaching school children. Appellants point out that an instructor's competency to teach is largely an individual matter in that appellant Nagle and others like her remain fit to teach

despite the fact that she has reached the age of 65. Furthermore, they dispute the appellees' contention that administrative convenience is an adequate justification for upholding the constitutionality of section 297-15. Finally, appellants maintain that there is no rational basis for treating 65-year-old teachers as a class distinct from other public employees who are allowed to retire at the age of 70.

Mindful of the fact that this court's only responsibility under the rational basis test is to look for any conceivable reason for upholding a challenged statute, we conclude that the reasons offered by the appellees in support of section 297-15 are adequate. First of all, we agree with the appellees that section 297-15 has a rational relationship to the state objective of increasing employment positions for young teachers. The mandatory retirement of older employees under section 297-15 will probably make at least a few teaching positions available for younger instructors. Moreover, given the state of today's economy, we can understand why the legislature would probably have considered this objective important. New teachers in Hawaii have limited employment opportunities because of an extremely tight job market.[4]

In light of these valid concerns, section 297-15 cannot be declared unconstitutional simply because it cannot make teaching positions available for every young instructor. As the United States Supreme Court has pointed out, a statute which is being analyzed under the rational basis standard need not provide the perfect solution to a problem:

> If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge v. Williams, supra* at 485, citing *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 (1911).

---

[4] As the appellees pointed out in their answering brief (p. 52):

> While our economy may some day reach the point where *every* individual may one day be employed in precisely the occupation of his choice, as long as he chooses to work, Appellees respectfully submit that our economy is not yet at that point. By retaining older employees in the limited number of teaching positions now available, these positions must necessarily be withheld from younger employees seeking to enter the teaching profession. Consequently, it is not without a rational basis for the State to promote this turnover in employment by requiring mandatory retirement.

In addition, we do not share appellants' position that this court has broad discretion in this case to interpose its judgment for that of the legislature's in assessing the fairness of the statute to 65-year-old school teachers. While the operation of section 297-15 may cause some hardship to school teachers who are forced to retire with no other employment prospects, the legislature could have decided that the benefits to be gained from mandatory retirement in terms of creating more positions for young teachers outweigh the potential problems for 65-year-old instructors. We will not interfere with this legislative determination by undertaking the sort of balancing of competing public policy considerations normally left to the discretion of the legislature.

We also agree with the appellees' contention that section 297-15 advances state interests in maintaining student discipline and preserving the quality of instruction through the retirement of school teachers whose physical and mental skills generally decline with age. Even without the introduction of expert medical testimony, it is a common sense proposition that the physical and mental demands of teaching and disciplining unruly school children place great stress on many older instructors.

Moreover, the fact that Nagle and a few other teachers like her may be physically and mentally fit to teach does not affect the constitutionality of the statute under the rational basis test. Since there is at least a reasonable statistical relationship between advanced age and declining physical and intellectual skills, we conclude that the goal of retiring teachers whose competency may be impaired by advanced age is a valid state interest.

Finally, we agree with the appellees that section 297-15 supports a state interest in administrative convenience. Contrary to the appellants' assertion, the United States Supreme Court has stated on several occasions that administrative convenience may be considered a legitimate state interest under the rational basis standard of review. See Weinberger v. Salfi, 422 U.S. 749 (1975).

In the instant case, we anticipate significant administrative difficulties for the State if we uphold the appellants' position. Appellants argue that the State should adopt procedures in which the competency of each school teacher can be reviewed on an individualized basis. A logical consequence of the appellants' argument is that the State would be forced to assume the tremendous adminis-

trative burden of granting individualized hearings to 65-year-old school teachers concerning their fitness for employment. As the trial court pointed out, it was appalled at the prospect of the additional personnel and paperwork that would be involved if each 65-year-old teacher's application were reviewed on a case-by-case basis.[5] Since mandatory retirement obviates the necessity for time-consuming, individualized hearings involving 65-year-old teachers, section 297-15 furthers a state interest in administrative convenience.

Given these arguments in support of the constitutionality of section 297-15, there also is a rational basis for mandating the retirement of teachers at 65 years of age while allowing other public employees to retire at age 70. The legislature could have rationally concluded that the demands of teaching are much greater on an individual than those of other occupations, justifying the retirement of teachers at the earlier age of 65 instead of 70. In *Vance v. Bradley, supra,* the United States Supreme Court accepted a similar argument in upholding the constitutionality of a federal retirement statute which set the retirement age for foreign service officers at 60 where civil service employees could retire at 70. The Court held that the lower retirement age for foreign service officers is warranted because young employees are more capable of working overseas where job conditions are more demanding than employment conditions within the United States. *Id.* at 111-12. Moreover, the legislature

---

[5] For example, the following dialogue took place between the trial court and appellants' attorney:

THE COURT: You have the same problem. If they want a discretionary thing, you have the same thing in *Nelson* though. It is a difficult, [sic] Mr. Gill, you know, it is easy to say. Use a different standard, other than mandatory, but knowing the bureaucracy and the way our bureaucracy works, can you imagine what happens if we left it up to an administrator to decide whether a man is competent or not competent?

MR. GILL: I would agree that you have a problem there.

THE COURT: Do you know evaluation records right now are almost worthless?

MR. GILL: They are not the greatest.

THE COURT: It doesn't mean anything almost. So if you are going to be basing on the subjective, and it is not an objective standard, almost subjective evaluation of people.

MR. GILL: Oh, we would have a little —

THE COURT: You are going to have a problem.

MR. GILL: I don't think we can turn around and say, "Gentlemen, over here. Would you just kindly make a ruling on this." I think that. . . .

could have rationally concluded that the unemployment situation for young teachers was becoming so acute that mandating the retirement of teachers at the age of 65 was more preferable in terms of creating immediate employment opportunities than waiting until they reached the age of 70. For all of these reasons, the legislature's determination that 65 rather than 70 would be the appropriate age limit is constitutional.

Because section 297-15 passes constitutional muster under the rational basis test, we hold that the statute is not violative of the equal protection clause of the Hawaii Constitution.

### B.   THE RIGHT TO WORK AS A FUNDAMENTAL RIGHT.

Appellants further argue that section 297-15 is unconstitutional because it invades a fundamental right to work in the absence of compelling state interests.

While it is true that a statute must withstand the strict scrutiny test where a fundamental right is involved, *San Antonio School District v. Rodriguez, supra; Shapiro v. Thompson, supra,* this court has already held that the right to work is not fundamental and that, therefore, only the rational basis test applies. *Maeda v. Amemiya,* 60 Haw. 662, 594 P.2d 136 (1979). We stated in *Maeda,* at 669, 594 P.2d at 141:

> Yet, in the context of equal protection analysis, where there has been no showing that the statute operates to the peculiar disadvantage of a suspect class, the right to work, as a constitutionally protected right, does not invoke the application of the strict scrutiny standard. *Massachusetts Board of Retirement v. Murgia, supra* at 314; *Hicklin v. Orbeck,* 565 P.2d 159, 166 (Alaska 1977); *Commonwealth v. Henry's Dry Wall Co., Inc.,* 366 Mass. 539, 542, 320 N.E.2d 911, 914 (1974). *See Stockton v. Parks and Wildlife Commission,* 571 S.W.2d 338, 343 (Tex. Civ. App. 1978). Where economic interests are concerned, the rational basis test is the proper standard. *Dandridge v. Williams,* 397 U.S. 471, 485 (1970). *See Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 390 (1978); *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 814 (1976).

This ruling in *Maeda* is consistent with the United States Supreme Court's own position that the right to work, at least with respect to

government employment, is not fundamental. *See Massachusetts Board of Retirement v. Murgia, supra.*

Based on these cases, we must reject the appellants' argument that section 297-15 invades a fundamental right to work. Therefore, the appropriate standard for reviewing the constitutionality of section 297-15 is the rational basis test which, as this court has already held, the statute meets.

## C. THE IRREBUTTABLE PRESUMPTION CONCERNING A SCHOOL TEACHER'S COMPETENCY AND FITNESS TO TEACH.

Finally, appellants argue that section 297-15 establishes an irrebuttable presumption which violates the due process clause of the Hawaii Constitution. They contend that by mandating the retirement of public school teachers at age 65, the statute presumes without empirical support that 65-year-old teachers are physically and intellectually less capable of handling teaching responsibilities than younger school instructors. Moreover, appellants point out that this presumption is irrebuttable since 65-year-old teachers do not have the opportunity to demonstrate their competency at individualized hearings. Given the existence of an irrebuttable presumption in this case, appellants ask this court to strike down this presumption unless we find that it meets the strict scrutiny test.

In reviewing the appellants' contentions, we note that this court has never addressed itself to the constitutional questions surrounding irrebuttable presumptions. As such, we now turn to federal law for guidance on this matter. Our reading of the United States Supreme Court irrebuttable presumption decisions is that they expound the traditional tests for violations of the equal protection and due process clauses. *See Stanley v. Illinois,* 405 U.S. 645 (1972); *Cleveland Board of Education v. LaFleur,* 414 U.S. 632 (1974); *Weinberger v. Salfi,* 422 U.S. 749 (1975); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1 (1976). A rigorous standard of review similar to strict scrutiny is appropriate only where an irrebuttable presumption creates a suspect classification or infringes upon a fundamental right. *Cleveland Board of Education v. LaFleur, supra; Stanley v. Illinois, supra.* In all other cases, the rational basis test is the appropriate standard of review. *Weinberger v. Salfi, supra.*

For example, in *Stanley v. Illinois,* the Supreme Court rigorously scrutinized an irrebuttable presumption which infringed upon a fundamental right. The case involved a challenge to the constitutionality of an Illinois statutory scheme in which the children of unwed fathers became wards of the state upon the death of the mother without a hearing to establish the father's unfitness or to prove his neglect. However, such a hearing would have been required under Illinois law where the state assumed custody over the children of unmarried mothers. In effect, the Illinois statute raised an irrebuttable presumption that unwed fathers are unfit to raise their children.

The Supreme Court held that the presumption embodied in the Illinois statute violated the due process clause of the United States Constitution. In reaching this result, the Court used a standard of review similar to the strict scrutiny test because it concluded that the Illinois statute infringed upon parental rights to conceive and to raise children which the Court deemed "essential" under the Constitution. *Id.* at 651, citing *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923); *Skinner v. Oklahoma,* 316 U.S. 535, 541 (1942); and *May v. Anderson,* 345 U.S. 528, 533 (1953).

Similarly, in *Cleveland Board of Education v. LaFleur, supra,* the Supreme Court reviewed statutory presumptions of unfitness under a rigorous scrutiny test because the presumptions implicated fundamental interests. In *Cleveland Board,* pregnant public school teachers challenged the constitutionality of the mandatory maternity leave rules of the Cleveland, Ohio and Chesterfield, Virginia school boards. The Cleveland rule required a pregnant school teacher to take unpaid maternity leave five months before the expected childbirth, with leave application to be made at least two weeks before her departure. The Chesterfield County rule required the teacher to leave work at least four months, and give notice at least six months, before the anticipated childbirth. In effect, the rules established an irrebuttable presumption that pregnant school teachers are physically unfit to continue teaching. The Supreme Court held that the rules violated the due process clause because they failed to provide for individualized hearings on an instructor's fitness to teach. The Court emphasized that the rules restricted a mother's freedom to decide whether "to bear or beget a child" and, hence, invaded one of the fundamental liberties protected by the

due process clause of the Fourteenth Amendment. *Id.* at 639-40. The Court concluded that the maternity leave regulations were overly restrictive because they penalized pregnant teachers without providing for a case-by-case examination of their fitness to teach. *Id.* at 644.

In both *Cleveland Board* and *Stanley v. Illinois,* the Court engaged in an analysis similar to strict scrutiny only because the challenged laws impinged upon fundamental rights. The fact that the statutes contained irrebuttable presumptions was not in itself a sufficient reason to require the use of the rigorous standard.

However, in cases involving neither fundamental rights nor suspect classifications, the Supreme Court has resorted to the minimum rationality test in reviewing statutory presumptions. For example, in *Weinberger v. Salfi, supra,* the Supreme Court reviewed a duration-of-relationship provision of the Social Security Act, 42 U.S.C. §§ 416 (c)(5) and (e)(2) (1970 ed. and Supp. III), which excluded surviving wives and stepchildren from receiving Social Security insurance benefits where their respective relationships to a deceased wage earner covered less than nine months prior to his death. After her husband of less than six months died, appellee Salfi filed applications for mother's Social Security insurance benefits for herself and child's insurance benefits for her daughter by a previous marriage. However, the Social Security Administration, both initially and on reconsideration at the regional level, denied the applications on the basis of the duration-of-relationship requirement. The appellees contended that the nine-month requirements were unconstitutional "irrebuttable presumptions." The presumption in the statute was that "'marriages like Mrs. Salfi's, which did not precede the wage earner's death by at least nine months, were entered into for the purpose of securing Social Security benefits.'" *Id.* at 767-68. Moreover, the presumption was conclusive because applicants were not afforded an opportunity to disprove the presence of the illicit purpose. *Id.* at 768.

The District Court held that the provisions were invalid under the authority of *Cleveland Board, supra,* and *Stanley v. Illinois, supra.* The Supreme Court reversed the District Court's decision by distinguishing *Cleveland Board* and *Stanley v. Illinois* from *Weinberger.* While *Cleveland Board* and *Stanley v. Illinois* involved fundamental personal liberties protected under the constitution, the statute in

*Weinberger* fell within the area of economic legislation in which the Court has traditionally exercised limited judicial review. Therefore, the Court was able to affirm the constitutionality of the statute under the lenient rational basis test and avoided the strict scrutiny standard which would have been difficult to meet.

Likewise, in *Usery v. Turner Elkhorn, supra,* the Supreme Court reviewed the constitutionality of irrebuttable presumptions under the rational basis test given the absence of fundamental interests. In *Usery,* twenty-two coal mine operators challenged the constitutionality of certain aspects of Title IV of the Federal Coal Mine Health and Safety Act of 1969, 83 Stat. 792, as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150 (current version at 30 U.S.C. § 901 (1970 ed. and Supp. IV) ). The statute provides benefits to coal miners suffering from "black lung disease" (pneumoconiosis) and to survivors of miners who have been physically incapacitated by the disease. With respect to claims filed by miners for compensation, an operator is liable for benefits involving death or total disability caused by pneumoconiosis where the disease arises during employment in an operator's mine. The Act prescribed several "presumptions" for use in determining compensable disability. For example, under section 921(c)(3) a miner shown by x-ray or other clinical evidence to be afflicted with complicated pneumoconiosis, the disease's incurable and final stage, was "irrebuttably presumed" to be totally disabled due to the disease. If such a miner has died, it is irrebuttably presumed that he was totally disabled by the disease at the time of death and that his death was the result of such a disease. The statute also contained several rebuttable presumptions, one of which was that a miner was presumed to have contracted pneumoconiosis during the course of his employment if he had been employed for ten or more years. Section 921(c)(1).

The operators contended that these presumptions violated the due process clause of the Fifth Amendment. The Supreme Court upheld the constitutionality of these presumptions under the rational basis test because it concluded that the statute covered "purely economic matters." *Id.* at 24. As the Court stated:

> We have consistently tested presumptions arising in civil statutes such as this, involving matters of economic regulation, against the standard articulated in *Mobile, J. & K. C. R. Co. v.*

*Turnipseed,* 219 U.S. 35, 43 (1910):

> "That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate."

*Id.* at 28.

As was true in *Weinberger, supra,* the Court in *Usery v. Turner Elkhorn, supra,* resorted to traditional equal protection and due process analyses in reviewing the statutory presumptions. Several lower federal courts have also analyzed irrebuttable presumptions under the traditional rational basis test in the absence of suspect classifications or fundamental interests. *See Johnson v. Lefkowitz,* 566 F.2d 866 (2d Cir. 1977); *Malmed v. Thornburgh,* 621 F.2d 565 (3d Cir. 1980).

Given this line of cases, we see no reason to deviate from traditional equal protection and due process analyses even where a constitutional challenge has been lodged against a statutory presumption. This court will employ strict scrutiny only where a suspect classification or fundamental interest is at stake.

Because section 297-15 involves neither fundamental interests nor suspect classifications, we conclude that the rational basis test is the appropriate standard for reviewing the statutory presumption embodied in that statute. A statute which presumes that the rigors of modern-day teaching place too much stress on a 65-year-old teacher is reasonable and, therefore, constitutional.

Accordingly, we affirm the judgment of the trial court.

*Thomas P. Gill* and *Sean Kim (Gill, Park & Park* of counsel) for plaintiffs-appellants and plaintiff-intervenor-appellant.

*Lawrence D. Kumabe,* Deputy Attorney General, for defendants-appellees.