922 P.2d 942

**In re the Applications of Kelly HERRICK and Catherine T. Irish.**

No. 18534.

Supreme Court of Hawai'i.

July 31, 1996.

John P. Manaut of Carlsmith Ball Wichman Murray Case & Ichiki, on the briefs, Honolulu, for petitioners-appellants.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Appellants Kelly Herrick and Catherine Irish appeal from decisions of the Hawai'i Board of Certified Shorthand Reporters that denied their requests "for a special exemption or temporary certification until they pass ... the Board's examination requirements."

For the reasons set forth below, we reject Appellants' arguments and affirm the decision of the Hawai'i Board of Certified Shorthand Reporters.

## I. BACKGROUND

### A. The Development of the Rules Governing Court Reporting in the State of Hawai'i ("RGCR")

On February 28, 1984, this court promulgated the RGCR. Under RGCR 2:

No person shall engage in the verbatim reporting of trials or judicial proceedings in any of the courts of the State of Hawai'i, nor shall any person engage in the taking of oral depositions, for use in the courts of this state, unless such person shall possess a certificate as a Hawai'i certified shorthand reporter issued by the supreme court through the Hawai'i Board of Certified Shorthand Reporters.

RGCR 2 essentially provides that a court reporter's verbatim transcripts cannot be used in any court in Hawai'i unless that reporter is certified in accordance with the RGCR.[1]

---

1. It is important to note that RGCR 2 is not a general licensing provision. Neither Article VI of the Hawai'i Constitution nor HRS § 602–5 provide the authority to impose a universal licensing requirement upon all shorthand reporters. Furthermore, this court simply does not have the resources to regulate all aspects of shorthand reporting. See, e.g., RGCR 2 ("[t]his

■■■ This court has the authority under Article VI, § 7 of the Hawai'i Constitution and Hawai'i Revised Statutes (HRS) § 602–11 "to promulgate rules in all civil and criminal cases for all courts relating to process, practices, procedure and appeals[.]" Because we have the constitutional and statutory authority to supervise and control court proceedings, we prescribe minimum standards for shorthand reporters whose transcripts are to be used in the state courts. *See* RGCR 1; *cf. Kudlich v. Ciciarelli*, 48 Haw. 290, 300, 401 P.2d 449, 455 (1965) (holding that a First Circuit Court rule was "related to practice in the circuit court and accordingly was within the scope of this court's constitutional power"). Put another way, to ensure minimum standards in court reporting in Hawai'i courts, RGCR 2 states that transcripts must be prepared by certified shorthand reporters:

### Rule 2. CERTIFICATION OF COURT REPORTERS.

No person shall engage in the verbatim reporting of trials or judicial proceedings in any of the courts of the State of Hawai'i, nor shall any person engage in the taking of oral depositions, for use in the courts of this state, unless such person shall possess a certificate as a Hawai'i certified shorthand reporter issued by the supreme court through the Hawai'i Board of Certified Shorthand Reporters.

Unless specifically exempted by order of the supreme court, no verbatim transcripts or recording of any trial or judicial proceeding in any of the courts of the State of Hawai'i, nor any transcripts or recordings of any oral depositions taken in the State of Hawai'i, for use in the courts of this state, shall be accepted for filing unless signed and certified by a Hawai'i certified shorthand reporter.

Unless specifically exempted by order of the supreme court, no transcripts of depositions upon written interrogatories shall be accepted for filing unless signed and certified by a Hawai'i certified shorthand reporter certifying that same were taken under his or her direction and control.

Unless specifically exempted by order of the supreme court, or by the Temporary Rules for Appeals Where Experimental Use is Made of Videotape Equipment to Record Trial Court Proceedings, no videotape depositions shall be accepted for filing unless accompanied by a written transcript of the proceedings prepared by, and signed and certified by, a Hawai'i certified shorthand reporter.

The form of certification required shall be established by the Hawai'i Board of Certified Shorthand Reporters. This rule shall not apply to depositions taken and transcribed outside of the State of Hawai'i.

Any person to whom a certificate is issued shall use the title "Certified Shorthand Reporter" or the abbreviation therefor, "C.S.R." with their identification number upon the certification of any transcript. The use of such title or abbreviation and number by a person who does not hold such a certificate in the State of Hawai'i shall be regarded as contempt of court and may be punished accordingly.

An uncertified court reporter, however, is not prohibited from transcribing federal cases, private arbitrations, out-of-state depositions, or any proceeding for which the transcript will not be introduced in Hawai'i state court proceedings.

To be certified under the RGCR, an applicant must pass a proficiency examination. The Hawai'i Board of Certified Shorthand Reporters administers the National Court Reporters Association's standardized examination in May and November of each year. The exam consists of two parts: (1) a written examination covering grammar, spelling, technology, and medical and legal terminology; and (2) a "speed and accuracy" test. The "speed and accuracy" portion of the examination consists of fifteen minutes of dictation that must be completed at the following speeds: literacy material at 180 words per minute (wpm); jury charge material at 200 wpm; and testimony material at 225 wpm. A passing score requires 70% for the written test and a 95% accuracy rate at the required speeds for the "speed and accuracy" test. *See* RGCR 10(a) and 10(c)(3); RGCR

rule shall not apply to depositions taken and

transcribed outside of the State of Hawai'i").

Exhibit A, Rule 1(a); and RGCR Exhibit A, Form 1.

An applicant who successfully completes the examination receives the "CSR" designation and is certified as a Certified Shorthand Reporter under the RGCR. In the past, if the applicant did not pass the examination, original RGCR 11(b) allowed the applicant to apply for up to two temporary certificates provided the applicant continued to take the examinations. *See* RGCR 11(b).[2] Because the examinations are given twice a year, the original RGCR 11 allowed an unsuccessful applicant to be temporarily certified for up to one year while the applicant tried to pass the examination.

On March 7, 1990, this court[3] amended RGCR 11(b) to allow a temporarily certified shorthand reporter ("T–CSR") to renew a temporary court reporter certificate indefinitely as long as the T–CSR continued to sign up for and take the certification examination. RGCR 11(b) (1990) read as follows:

(b) The temporary certificate shall be valid up through and including the sixtieth day following the date upon which the board gives its next examination for certification as a certified shorthand reporter following the date the temporary certificate is issued. No additional temporary certificates shall be issued to any applicant who fails to take the next scheduled examination for certification as a Hawaii certified shorthand reporter. In the event the applicant fails to pass the examination for certification as a Hawaii certified shorthand reporter, and desires to obtain another temporary certificate, the applicant must, within sixty days following the date of the examination for certification as a Hawaii certified shorthand reporter, apply for a new temporary certificate and meet the requirements of the rule. [No more than two temporary certificates shall be issued by the board to any one individual.]

(The 1990 amendment deleted the bracketed sentence from the original RGCR 11(b)). The 1990 amended version of RGCR 11(b) (hereinafter "1990 RGCR 11(b)") was further amended because there was some "difficulty [in] hiring certified shorthand reporters [for]

2. RGCR 11 (1984) read in its entirety:
   Rule 11. TEMPORARY CERTIFICATION.
   (a) Temporary certification to engage in the verbatim reporting of trials or judicial proceedings in any of the courts of the State of Hawaii, or for the taking of depositions, either on written or oral examination, for use in the courts of this state, shall be granted by the board, upon application on forms approved by the board and obtainable from the court administrator's office, under the following circumstances:
   (1) the applicant possesses a certificate or diploma evidencing graduation from high school, GED certificate, or equivalent;
   (2) the applicant demonstrates reasonable proficiency in making verbatim records of judicial or related proceedings as provided in HRS § 606–11. For the purpose of this rule, the applicant's demonstration of "reasonable proficiency" shall be determined by the applicant's ability to pass an examination for temporary certification given by the board, any member of the board, or any person or entity designated by the board with the authority to give such examination; and
   (3) the applicant is in compliance with these Rules Governing Court Reporting in the State of Hawaii and any rules and regulations adopted by the board, and has paid the appropriate certification fee established by the board.

   (b) The temporary certificate shall be valid up through and including the sixtieth day following the date upon which the board gives its next examination for certification as a certified shorthand reporter following the date the temporary certificate is issued. No additional temporary certificates shall be issued to any applicant who fails to take the next scheduled examination for certification as a Hawaii certified shorthand reporter. In the event the applicant fails to pass the examination for certification as a Hawaii certified shorthand reporter, and desires to obtain another temporary certificate, the applicant must, within sixty days following the date of the examination for certification as a Hawaii certified shorthand reporter, apply for a new temporary certificate and meet the requirements of this rule. No more than two temporary certificates shall be issued by the board to any one individual.
   (c) A reporter certified in another state may apply to the board for temporary certification based on the certification already obtained.

3. On March 7, 1990, the Supreme Court of Hawai'i was composed of Chief Justice Herman T.F. Lum, Associate Justice Frank D. Padgett, Associate Justice Yoshimi Hayashi, Associate Justice James H. Wakatsuki and Associate Justice Edward H. Nakamura.

the courthouse." The 1990 RGCR 11(b) created a small body of uncertified shorthand reporters whose transcripts were still admissible in Hawai'i court proceedings. Pursuant to 1990 RGCR 11(b), the Hawai'i Board of Certified Shorthand Reporters[4] adopted a policy that all unsuccessful applicants would receive *automatic* temporary certificates as long as they continued to sign up for and take the certification examination.

The 1990 RGCR 11(b) came under immediate criticism. Many felt 1990 RGCR 11(b) was far too lenient and degraded the certification process. In response to these criticisms, the Board of Certified Shorthand Reporters notified all certified shorthand reporters ("CSRs") and T–CSRs that it would "hold a public forum meeting to solicit comments on changes related to T–CSR certificates pursuant to Rule 11 of the Rules Governing Court Reporting" on July 10, 1992. On May 20, 1992, the Board sent a letter to all CSRs and T–CSRs in Hawai'i. The letter stated in its entirety:

*NOTICE OF PUBLIC FORUM TO COM-MENT ON RULE 11, RULES GOVERN-ING COURT REPORTING*

At the CSR Board meeting of May 8, 1992, a motion was carried to hold a public forum meeting to solicit comments on changes related to T–CSR certificates pursuant to Rule 11 of the Rules Governing Court Reporting.

The Board's desire is to maintain and certify competent professionals and to provide an incentive for T–CSR certificate holders to obtain their CSR certificate. Since this issue effects [sic] all court reporters, the

Board desires comment from all interested parties.

The meeting will be held on July 10, 1992 at 12:00 noon in the First Circuit Court (777 Punchbowl Street) Multi-purpose Room, 3rd floor, Ewa end.

Anyone wishing to make comments in person should contact Alice Kamahele, Secretary to the Board, to reserve a time slot. Holders or others, unable to attend may submit their comments in writing to the Board not later than July 5, 1992.

Since this issue is important to our profession, I urge all reporters to express their thoughts and concerns at this meeting.

At the July 10, 1992 meeting, a number of individuals, including Appellant Herrick, offered written and/or oral testimony regarding the proposed amendment to 1990 RGCR 11(b). The Board decided at its August 14, 1992, meeting to recommend the repeal of 1990 RGCR 11(b).

On August 20, 1992, the Board notified all T–CSRs that it would recommend that the supreme court repeal 1990 RGCR 11(b). The Board assured the T–CSRs that it would do "everything necessary to insure success,"[5] which included offering free speed-building classes, free practice materials, and rearranging "the test in two segments allowing for more room to spread out during the test."

On September 21, 1992, Robert C. Fazio, Chairman of the Board of Certified Shorthand Reporters, sent to then Chief Justice Herman Lum a number of proposed amendments to the RGCR. One of the proposals was the proposed amendment to 1990 RGCR 11(b). On November 10, 1992, this court[6]

---

4. RGCR 3 created the Hawai'i Board of Certified Shorthand Reporters "[i]n order to supervise the examination, certification and conduct of court reporters engaged in reporting matters before the courts of this state or for use therein[.]"

5. The Board's August 20, 1992 letter stated:

   The CSR Board will recommend to the Supreme Court that Rule 11 be repealed and changed to read:
   "Temporary certification in the State of Hawaii is hereby repealed. Reporters practicing under Rule 11 governing temporary certification have until November, 1993 to obtain CSR/RPR status. Under separate

resolution, speed building seminars will be available upon request from the CSR Board until November, 1993."
My friends, this is a year-and-a-half away. You will notice that every opportunity will be afforded you in passing this test. We will give you live dictation, we will give you practice tapes, we will give the test in two segments allowing for more room to spread out during the test.
In other words, this Board will do everything necessary to insure success. The only thing we ask of you is simple, PRACTICE.

6. On November 10, 1992, the Supreme Court of Hawai'i was composed of Chief Justice Herman

amended the RGCR by incorporating the Board's proposed rule changes. The current RGCR 11 went into effect on November 10, 1992, and reads:

### Rule 11. TEMPORARY CERTIFICATION.

Temporary certification in the State of Hawaii is hereby repealed. Reporters practicing under Rule 11 governing temporary certification have until November 1993 to obtain CSR/RPR status. Under separate resolution, speed building seminars and practice dictation tapes/audio will be available three months prior to all tests until November 1993.

On November 20, 1992, the Board informed all T–CSRs of the RGCR amendments and sent to each person a copy of the new rules.

### B. *The Parties*

Appellants Kelly Herrick and Catherine Irish attended Rasmussen Business College, a court reporting school approved and accredited by the National Court Reporters Association. Each successfully completed her studies and received a court reporting certificate from Rasmussen. Appellant Irish received her school certificate in February 1990, and Appellant Herrick received her school certificate in January 1991.

Appellants Herrick and Irish moved to Hawai'i where they found jobs as shorthand reporters with private reporting companies. Appellant Irish first took the Hawai'i court reporter examination on March 30, 1990. Although Appellant Irish did not pass the examination, the Board, pursuant to 1990

RGCR 11(b), issued a temporary court reporter certificate to her on April 2, 1990.

Like Appellant Irish, Appellant Herrick did not pass the court reporter exam, but was issued a temporary court reporter certificate on March 27, 1991. Appellants Herrick and Irish continued to take the examination but were not successful.

When 1990 RGCR 11(b) was repealed in November 1992, Appellants still had not passed the certification examination. Appellants continued to take the exams, but both failed the May and November tests and therefore did not meet the new rule's November 1993 deadline. Thus, in accordance with the current RGCR 11, the Board informed Appellants Herrick and Irish that their temporary court reporter certificates lapsed on January 6, 1994.

Appellants asked the Board for a special exemption from the current RGCR 11 or for continued temporary certification. The Board denied the request in October 1994. Appellants appealed to this court under RGCR 9(a).[7]

## II. *ARGUMENTS ON APPEAL*

Appellants argue that: (1) the Board's proposal to repeal 1990 RGCR 11(b) failed to take into account the interests of all T–CSRs who relied upon automatic license renewals until they passed the certification examination; (2) Appellants' freelance court reporting services constitute a business enterprise that is entitled to constitutional protection against the impairment of contract; (3) the Board's decision to recommend repeal of

---

T.F. Lum, Associate Justice Ronald T.Y. Moon, Associate Justice Robert G. Klein, Associate Justice Steven H. Levinson and Intermediate Court of Appeals Chief Judge James S. Burns substituting for Associate Justice James H. Wakatsuki.

7. RGCR 9(a) provides the following:

> ### Rule 9. FINAL DECISIONS OF THE BOARD; APPEALS FROM DECISIONS OF THE BOARD.
> (a) All decisions of the board denying any application for certification shall be made in writing, and the reasons for denying the application for certification shall be included in the decision of the board and filed with the court administrator's office. The decision shall be

attested by an officer of the board. A copy of the board's decision, together with the reasons for its decision, shall be mailed to the applicant at his or her last known address by certified and/or registered mail by the board or the court administrator's office. An appeal from any decision of the board with respect to the denial of certification may be taken by filing a notice of appeal with the supreme court within thirty (30) days after the date of mailing of the decision of the board by certified and/or registered mail to the applicant's last known address. On appeal, the supreme court shall reverse only upon finding that the decision of the board was arbitrary or capricious. The decision of the supreme court shall, for the purpose of certification, be final.

1990 RGCR 11(b) violated Appellants' substantive and procedural due process rights; and (4) this court should grant them a special exemption to allow their transcripts to be accepted under RGCR 2.[8]

## III. STANDARDS OF REVIEW

■ This is an original proceeding. For Appellants' first and fourth arguments, RGCR 9(a) states "the supreme court shall reverse only upon a finding that the decision of the board was arbitrary or capricious."

Appellants' remaining constitutional arguments are freely reviewable by this court. See Crosby v. State Dep't of Budget and Finance, 76 Hawai'i 332, 341, 876 P.2d 1300, 1309 (1994) ("[t]o the extent that Crosby's claim is based on his First Amendment Rights ... we must make 'an independent constitutional judgment on the facts of the case'") (citations omitted), cert. denied, —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 635 (1995).

## IV. DISCUSSION

### A. Promissory Estoppel

Appellants claim that they moved to Hawai'i, at least in part, because 1990 RGCR 11(b) then provided for unlimited temporary certification:

Reporter Rule 11, as in effect from March 7, 1990, established rights and restrictions upon which the applicants relied to move to Hawaii and establish their careers and livelihoods. At the time, the availability of CSR court reporters were limited, and the rule change was designed to encourage reporters to practice in the State by offering temporary certification if they took each successive exam until passing. Relying on that intended expansion of court reporting availability, the applicants came to Hawaii and continuously have provided

diligent, professional, and accurate services to the Hawaii legal community.

Appellants' Opening Brief at 13–14.

■ Although Appellants' reliance argument is cryptic and contains no supporting legal authority, we surmise that they are advancing a promissory estoppel argument.

[A] promissory estoppel may arise as an application of the general principle of equitable estoppel to certain situations where a promise has been made, even though without consideration, if it was intended that the promise be relied upon and was in fact relied upon, and a refusal to enforce it would be virtually to sanction the perpetration of fraud or result in other injustice.

Motonaga v. Ishimaru, 38 Haw. 158, 163 (1948) (citation omitted).

■ Section 90 of the Restatement (Second) of Contracts (1979), which we expressly adopted in Ravelo v. County of Hawaii, 66 Haw. 194, 201, 658 P.2d 883, 887–88 (1983), articulates the doctrine of promissory estoppel:

§ 90. Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may limited as justice requires....

Ravelo, 66 Haw. at 200, 658 P.2d at 887 (quoting Restatement (Second) of Contracts § 90).

Section 90 can be reduced to the following elements: [9]

(1) There must be a *promise;*

(2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (*foreseeability*);

(3) The promisee does in fact *rely* upon the promisor's promise; and

---

8. There is no appellee in this case. See RGCR 9(a).

9. "The principle of this section is flexible. The promisor is affected only by reliance which he

does or should foresee, and enforcement must be necessary to avoid injustice." Restatement (Second) of Contracts § 90 comment b (1981).

(4) Enforcement of the promise is necessary to avoid *injustice*.

4 R. Lord, *A Treatise on the Law of Contracts by Samuel Williston* § 8:5, at 85–95 (4th ed.1992).

■ A "promise" is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1979). The operative term in section 2(1) is "manifestation of intention." In elaborating on this term, the commentators have said that "[a] promisor manifests an intention if he believes or has reason to believe that the promisee will infer that intention from his words or conduct." Restatement (Second) of Contracts § 2(1) comment b.

■ The 1990 RGCR 11(b) specifically allowed a T–CSR to renew a temporary court reporter certificate indefinitely as long as the T–CSR continued to sit for the certification examination. However, 1990 RGCR 11(b) did not "promise" that this court would never abolish temporary certification by repealing 1990 RGCR 11(b). "[T]o the extent [a] license is subject to the state's police power, it is not vested." *Stroh v. Midway Restaurant Systems, Inc.,* 180 Cal.App.3d 1040, 226 Cal. Rptr. 153, 160 (1986) (affirming a preliminary injunction enjoining violations of rules of the Alcohol Beverage Control Board after revocation of a liquor license and pending an administrative appeal to the Alcohol Beverage Control Board). "No person can acquire a vested right to continue, when once licensed, in a business, trade or occupation which is subject to legislative control under the police powers." *Kenneally v. Medical Board of California,* 27 Cal.App.4th 489, 32 Cal.Rptr.2d 504, 508 (1994) (holding that a physician's right to continue his licensed profession is not a fundamental right) (quoting *Gregory v. Hecke,* 73 Cal.App. 268, 238 P. 787 (1925) (interior quotation marks omitted)). In granting a license, the state reserves the right to exercise its police powers and place additional regulatory burdens on license holders. *Cf. Kennedy v. Hughes,* 596 F.Supp. 1487, 1495 (D.Del.1984) ("It is presumed, absent unequivocal language, that a city, in granting a license, reserves the ability to exercise its police powers and place additional regulatory burdens on license holders."). "A license may be changed or even annulled by the supreme legislative power of the state whenever the public welfare demands it." *State ex rel. Kelley v. Bonnell,* 119 Ind. 494, 21 N.E. 1101 (1889) (holding that an action for mandamus will not lie to compel municipal officers to issue a liquor license to an applicant whose existing license has more than three months to run before expiring). "[T]here is no vested right in a public law which is not in the nature of a private grant, and, however beneficial a statute may be to a particular person or however injuriously the repeal may affect him, the legislature has the right to abrogate it." *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 322 (1939) (holding that the right of a taxpayer to a refund or credit for erroneously paid taxes pursuant to a special remedial statute was not vested, and, upon the repeal of the statute, such right was lost), *appeal dismissed, Illinois ex rel. Eitel v. Toman,* 308 U.S. 505, 60 S.Ct. 111, 84 L.Ed. 432 (1939); *see also, Martin v. State Liquor Authority,* 43 Misc.2d 682, 252 N.Y.S.2d 365, 373 (N.Y.Sup.Ct.1964) ("No person has a vested interest in any law or legislative policy which entitles him to have it remain unaltered for his benefit[.]") (citations omitted), *affirmed,* 15 N.Y.2d 707, 256 N.Y.S.2d 336, 204 N.E.2d 496 (1965). "The power to enact necessarily implies the power to repeal and one Legislature cannot be limited or bound by the actions of a previous one[.]" *Martin,* 252 N.Y.S.2d at 373 (citations omitted). Thus, the state's issuance of a professional, business, or trade license does not give the license-holder an absolute right to continue in that particular profession, business, or trade forever. *Cf. Eudy v. Jefferson Parish Council,* 363 So.2d 1235, 1237 (La.Ct.App.1978) ("When circumstances changed so that the number of persons requesting a peddler's permit made supervision and control difficult so as to endanger public health, the Council and the health agency reasonably decided to prohibit all such sales.").

Consistent with the foregoing principles, a New York court denied a plaintiff's motion for an order directing the commissioner of the Bureau of Motor Vehicles (the Bureau) to renew the plaintiff's license to operate an automobile driver's school, because the legislature had recently amended the licensing law to prohibit the license renewal of any such business that was located within fifteen hundred feet of a state, city, or county building where motor vehicle registration and licenses were issued to the public. *Cohen v. Splain*, 42 N.Y.S.2d 498 (N.Y.Sup.Ct.1942), *affirmed*, 266 A.D. 678, 41 N.Y.S.2d 567 (1943), *affirmed*, 291 N.Y. 558, 50 N.E.2d 658 (1943). Having originally obtained a license in 1932 permitting him to operate an automobile driver's school for a period of five years, the plaintiff successfully renewed his license to operate the school for another five years in 1937. However, in 1938, the legislature added the fifteen hundred foot distance requirement for license renewal.

> On November 24, 1942, [the plaintiff] sought a renewal of his license for a further period of five years. Such application, however, was denied, upon the ground that the address at which petitioner intends to continue the operation of his business is located within fifteen hundred feet of the Bureau's office.

*Cohen*, 42 N.Y.S.2d at 499. The *Cohen* court rejected any notion that the issuance and renewal of the plaintiff's license pursuant to the original licensing requirements somehow mandated that those same licensing requirements would govern all of the plaintiff's subsequent applications for license renewal, and, thus, the *Cohen* court held that the Bureau was correct in denying the plaintiff's application for license renewal:

> The mere issuance of the original license or its renewal in 1937, whereby [the plaintiff] was accorded the privilege of operating the business for two successive periods of five years, did not confer upon him a vested right successfully to insist that his future applications for renewal be governed only by the identical provisions of law which were in effect at either of the above times. The legislative right to amend statutory regulations pertaining to

a profession, trade or business may not thus be thwarted.

*Id.* at 499–500.

Indeed, it has been held that, when a legislature amends a licensing statute while a license application is pending, the "change in [the] licensure statute that occurs during the pendency of [the] application for licensure is operative as to the application, so that the law as changed, rather than as it existed at the time the application was filed, determines whether the license should be granted." *Lavernia v. Department of Professional Regulation, Bd. of Medicine*, 616 So.2d 53, 53–54 (Fla.Ct.App.1993) (holding that amendments to physician licensing requirements applied to a physician's pending license application, and, thus, the Board of Medicine was correct in denying the physician's license application), *review denied*, 624 So.2d 267 (Fla. 1993).

> A change in the law between a nisi prius and an appellate decision requires the appellate decision to apply the changed law. [Citations omitted]. A fortiori, a change of law pending an administrative hearing must be followed in relation for permits for future acts. Otherwise the administrative body would issue orders contrary to the existing legislation.

*Ziffrin v. United States*, 318 U.S. 73, 78, 63 S.Ct. 465, 469, 87 L.Ed. 621 (1943) (upholding the Interstate Commerce Commission's denial of an appellant's application for a permit to continue designated contract carrier operations under the grandfather clause of a particular statute, because Congress amended the relevant laws between the appellant's filing of the application and the Interstate Commerce Commission's final order, adding an additional requirement that the appellant could not fulfill).

In the instant case, the Board's past issuance and renewal of Appellants' temporary court reporter certificates pursuant to 1990 RGCR 11(b) did not confer upon Appellants a vested right to insist that 1990 RGCR 11(b) would forever govern their future applications for renewal. The provisions in 1990 RGCR 11(b) did not constitute a manifestation of any intention that this court would refrain from repealing temporary court re-

porter certification sometime in the future, nor did 1990 RGCR 11(b) justify Appellants in understanding that a commitment had been made to renew Appellants' temporary court reporter certificates forever. Thus, 1990 RGCR 11(b) did not constitute a "promise" as contemplated by the Restatement (Second) of Contracts § 2(1). Because the Appellants cannot satisfy the "promise" element of promissory estoppel, the Appellants' promissory estoppel argument must fail, and consequently, we need not analyze the three remaining elements of promissory estoppel, i.e., foreseeability, reliance in fact, and injustice.

### B. *Impairment of Contract*

Appellants next contend that the repeal of 1990 RGCR 11(b) violated their constitutional right to contract.[10] Appellants insist that "[e]xcept for the repeal of Reporter Rule 11, both applicants would have enjoyed continued contractual rights and income from work on in-state deposition jobs. The repeal of temporary certification has prevented them from working on in-state deposition jobs and caused them to lose significant income."

■ In deciding whether a state law has violated the federal constitutional prohibition against impairment of contracts, U.S. Const., art. I, § 10, cl. 1, we must assay the following three criteria: (1) whether the state law operated as a substantial impairment of a contractual relationship; (2) whether the state law was designed to promote a significant and legitimate public purpose; and (3) whether the state law was a reasonable and narrowly-drawn means of promoting the significant and legitimate public purpose. *See* 2 R. Rotunda & J. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.8, at 454 (2d ed.1992); *see also Anthony v. Kualoa Ranch, Inc.*, 69 Haw. 112, 119–20, 736 P.2d 55, 60 (1987) (analyzing whether a statute violated the contracts clause according to "whether the effect of the statute was a substantial impairment of the complaining parties' rights[,] ... what public policy under the police power was sought to be furthered by [the statute], and whether it changes the

contractual and property rights on reasonable conditions and is of a character appropriate to its public purpose").

### 1. *Substantial Impairment of a Contractual Relationship*

The threshold question is whether the repeal of 1990 RGCR 11(b) operated as a "substantial impairment" of a contractual relationship. *See Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992).

#### a. *Contractual Relationship*

■ The record does not show that Appellants had transcribing contracts with private attorneys at the time 1990 RGCR 11(b) was repealed. Appellants concede that the repeal of 1990 RGCR 11(b) had only a prospective effect on their business prospects: "the repeal of Reporter Rule 11(b) has affected their prospective contractual relations with Rosenberg Reporters and private attorneys in the community who request their services." Appellants do not allege that any *existing* contracts were impaired by the repeal of 1990 RGCR 11(b).

#### b. *Impaired Contractual Relationship*

■ Even if Appellants had an existing contract with a private attorney for transcribing services at the time 1990 RGCR 11(b) was repealed, that contract would still not have been impaired by the repeal of 1990 RGCR 11(b) because the present RGCR 11 gave all T–CSRs one year to pass the certification exam before temporary court reporter certificates would expire. Therefore, it was not the repeal of 1990 RGCR 11(b) that impaired Appellants' contracts, but rather Appellants' failure to pass the certification

---

**10.** Under Article I, section 10 of the United States Constitution, "[n]o State shall ... pass

any ... Law impairing the Obligation of Contracts."

examination within the one-year grace period.

### c. *Substantial Impairment*

■ However, assuming that Appellants had a contractual relationship with private attorneys, and further assuming that the relationships were impaired by the repeal 1990 RGCR 11(b), the record still shows that this impairment was not "substantial."

■ "[T]o determine whether the impairment complained of is 'substantial[,]' [t]he legitimate expectations of the contracting parties must be examined[.]" *Maryland State Teachers Ass'n, Inc. v. Hughes,* 594 F.Supp. 1353, 1360 (D.Md.1984). Other factors that a court must consider include "the severity of the impairment [and] the extent to which the subject matter has been regulated in the past." *Schieffelin & Co. v. Department of Liquor Control,* 194 Conn. 165, 479 A.2d 1191, 1199 (1984) (citing *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)).

Although the repeal of 1990 RGCR 11(b) may have limited Appellants' marketability, this "impairment" is not substantial in the constitutional sense because of Appellants' expectations and because Hawai'i has regulated the shorthand reporter field since 1984. To elaborate, at the time Appellants might have entered into transcribing contracts, Appellants knew or should have known several things: (1) the RGCR had been in effect since 1984; (2) for six years, from 1984–90, the RGCR strictly limited how long a T–CSR could retain a temporary court reporter certificate; and (3) even after 1990 RGCR 11(b) went into effect on March 7, 1990, Appellants, at most, had no more than a mere unilateral expectation that 1990 RGCR 11(b) would not be amended or would remain in effect until they could pass certification examinations.

Based on these understandings, we conclude that any "impairment" of contract was not substantial because: (1) Appellants' expectation that 1990 RGCR 11(b) would continue is not "an obligation of contract within the protection of constitutional guarantees." *Josic v. Josic,* 78 Ill.App.3d 347, 33 Ill.Dec.

871, 873, 397 N.E.2d 204, 206 (1979) ("expectancy[,] based upon an anticipated continuance of the existing law[,] is not an obligation of contract within the protection of constitutional guarantees"); and (2) Appellants would have entered into transcribing contracts at a time when court reporting was already regulated by the RGCR. As such, those contracts were subject to further regulation by amendments to the RGCR. *See Schieffelin & Co.,* 479 A.2d at 1199 ("if one buys into an enterprise already regulated in the particular to which he now objects, he buys subject to further legislation upon the same topic").

At best, Appellants might have entered into transcribing contracts in the hope that 1990 RGCR 11(b) would remain in effect unamended. Appellants knew that this court had already promulgated the RGCR governing the certification of court reporters. The original RGCR 11(b) strictly limited the number of renewable temporary court reporter certificates. Therefore, the repeal of 1990 RGCR 11(b) was not so unexpected or unfair so as to make the impairment of assumed contracts "substantial." Because we conclude that the repeal of 1990 RGCR 11(b) did not substantially impair any contractual relationships, Appellants' contract argument fails. *See Allied Structural Steel Co.,* 438 U.S. at 245, 98 S.Ct. at 2723.

■ Even assuming, arguendo, that the repeal of 1990 RGCR 11(b) did substantially impair Appellants' contractual relationships, we conclude that the remaining two elements of Appellants' impairment of contract claim are not satisfied here because (2) the repeal of 1990 RGCR 11(b) served a significant and legitimate public purpose, and (3) it was reasonably and narrowly drawn.

### 2. *Significant and Legitimate Public Purpose*

The purpose of promulgating the RGCR, including RGCR 11, is to expedite the orderly administration of justice and should be viewed as serving a significant and legitimate public purpose. *Cf. Estate of Matthewman,* 43 Haw. 90, 93 (1959); Nevada Revised Statutes § 656.020(2) (1991) ("[t]he practice of court reporting in the State of Nevada is

declared to affect the public health, safety and welfare and is subject to regulation and control in the public interest"). Likewise, the purpose of repealing or amending any rule within the RGCR is to expedite the orderly administration of justice and should be viewed as serving a significant and legitimate public purpose. Therefore, the repeal of 1990 RGCR 11(b) served a significant and legitimate public purpose.

### 3. *Reasonably and Narrowly Drawn*

The current RGCR 11 is narrowly drawn to accomplish the public purpose for which it was intended, namely the orderly and efficient administration of justice. Appellants opine that the current RGCR 11 is not narrowly drawn and point to HRS § 606–11. "The legislative guidelines for court reporter qualifications is [sic] narrower: either three years experience *or* examination for competency. One must therefore question what public purpose could be served by a broader, more restrictive rule as applied to these applicants already working competently in the state." Appellants' Opening Brief at 21.

In 1972, the legislature amended HRS § 606–11 to include the following language: "The party examined must write at the rate of at least one hundred and sixty words per minute, *or at such higher rate as may be prescribed* [.]" The legislature explained that "[t]he purpose of the bill is to amend the Hawaii Revised Statutes so as to eliminate inconsistencies with the rules of court[.]" Stand. Comm. Rep. No. 329–72, 1972 *House Journal* at 771. Therefore, while the RGCR were not in existence when the statute was amended, the legislature clearly intended that the supreme court could prescribe higher minimum standards for court reporters under its rulemaking authority.

1990 RGCR 11(b) was repealed to improve the competency of court reporting in the State of Hawai'i, as well as to safeguard the integrity of the certification process. Although the current RGCR 11 rescinded temporary certification, it gave all T–CSRs a one-year grace period in which to pass the certification examination. Moreover, the new rule provided that "speed building seminars and practice dictation tapes/audio will be available three months prior to all tests until November 1993." As a result, we conclude that the current RGCR 11 is· a reasonable and appropriate mechanism for improving the competency of court reporting in Hawai'i, safeguarding the integrity of the certification process, ensuring the orderly and efficient administration of justice, and protecting the integrity of transcripts offered into evidence in Hawai'i courts. *See Energy Reserves Group v. Kansas Power & Light,* 459 U.S. 400, 412, 103 S.Ct. 697, 705, 74 L.Ed.2d 569 (1983) (the state law must be "based upon reasonable conditions and [be] of a character appropriate to the public purpose justifying the legislation's adoption") (some brackets added and some omitted).

### C. *Due Process*

Appellants' third argument is that their procedural and substantive due process rights were violated when 1990 RGCR 11(b) was repealed.

#### 1. *Procedural Due Process*

Appellants contend that "[o]nce it became clear that the Board intended to recommend to the supreme court the complete repeal of temporary certification [by amending RGCR 11], [they] should have been provided adequate notice and an opportunity to be heard and present evidence against such revocation to satisfy due process concerns." Appellants' Opening Brief at 25.

We have said that "[p]rocedural due process protects only against a deprivation of liberty or property interests. Due process therefore is relevant only if liberty or property is deprived." *International Brotherhood of Electrical Workers v. Hawaiian Telephone Co.,* 68 Haw. 316, 332, 713 P.2d 943, 956 (1986) (citation omitted). Therefore, the preliminary issue in our due process analysis would usually address whether Appellants have a liberty [11] or

---

11. "Liberty," as defined in the constitutional sense, means more than mere freedom from restraint. It means not merely the right to go where one chooses, but to do such acts as he may judge best for his interest, not inconsistent with the equal rights of others; that is, to

property [12] interest in their temporary court reporter certificates. *See Kernan v. Tanaka,* 75 Haw. 1, 21, 856 P.2d 1207, 1218 (1993), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994).

However, we need not establish whether Appellants actually have a liberty or property interest in their temporary court reporter certificates, because the record shows that Appellants received individual notice and "the opportunity to be heard at a meaningful time and a meaningful manner" prior to this court's repeal of temporary court reporter certification. *Kernan,* 75 Haw. at 22, 856 P.2d at 1218.

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonable to convey the required information. If with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

*Klinger v. Kepano,* 64 Haw. 4, 10, 635 P.2d 938, 942 (1981) (ellipses and braces omitted). The appropriate process due in a situation requires consideration of three distinct factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the fiscal or administrative burdens that the ad-

ditional procedures would entail. *Kernan,* 75 Haw. at 22–23, 856 P.2d at 1218–19.

Utilizing a similar analysis of procedural due process, the United States Court of Appeals for the Seventh Circuit held that a federal district court did not violate procedural due process when it adopted rules creating a special trial bar and imposing an experience requirement upon all attorneys of the bar of the district court, even though the district court provided the attorneys with neither individual notice nor individual contested case hearings prior to the rule changes. *Brown v. McGarr,* 774 F.2d 777, 786 (7th Cir.1985). The *Brown* court initially utilized the following factors to determine whether the district court's action constituted rulemaking or an adjudication:

> To determine whether an action was rulemaking or adjudication, courts consider: (1) whether the action is generalized in nature, i.e., whether the action applies to specific individuals or to unnamed and unspecified persons; (2) whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts; and (3) whether the action determines policy issues or resolves a specific dispute between particular parties.

*Id.* at 780. The *Brown* court held that the district court's "finding of a correlation between trial experience and competence as a trial attorney, upon which the trial bar membership rule is based, is generalized fact finding, was not focused upon the competence of an individual attorney, and was legislative in nature[,]" and thus, the district court's action constituted rulemaking. *Id.* at 781.

Although the district court had not provided attorneys with *individual* notice before it

---

follow such pursuits as may be best adapted to his faculties and which will give him the highest enjoyment. The liberty mentioned is deemed to embrace the right of the citizen to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling, and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purpose above mentioned.

*Territory v. Gunst & Co.,* 18 Haw. 196, 198 (1907) (internal quotation marks omitted). *See also State v. Huelsman,* 60 Haw. 71, 88, 588 P.2d 394, 405 (1978).

12.   A property interest is not limited to the traditional right-privilege distinction, but also includes a benefit which one is entitled to receive by statute. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Bush v. Hawaiian Homes Comm'n,* 76 Hawai'i 128, 136, 870 P.2d 1272, 1280 (1994) (internal quotation marks, braces, ellipsis points, and citations omitted).

344

adopted the new rules, the district court had provided *general* notice to all attorneys by publishing a draft of the proposed rules in a local law bulletin and law journal and a *general* invitation to all interested attorneys to attend public hearings on the proposed rule changes:

Whether an affected party must receive individual notice depends upon the character of the action. When individual interests are adversely affected by a legislation action, publication of the statute puts all individuals on notice of a change in the law of the jurisdiction; individual notice is not required. *Texaco v. Short,* 454 U.S. 516, 531–38, 102 S.Ct. 781, 793–97, 70 L.Ed.2d 738 (1982). "[I]t has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." *Id.* at 536, 102 S.Ct. at 796. *See also, Atkins v. Parker,* [472] U.S. [115, 130], 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985).

*Id.* at 784. The *Brown* court affirmed the district court's holding "that because adoption of the trial bar membership requirement was an exercise of rulemaking rather than adjudicatory power, the Fifth Amendment's requirement of individualized due process did not apply[,]" and thus, under these circumstances, the district court's notice by publication satisfied the "prior notice" element of procedural due process. *Id.*

Furthermore, the *Brown* court considered the following three factors in determining whether the general public hearings on the proposed rule changes satisfied the right of the attorneys to be heard:

First, the private interests that will be affected by the official action; second, the risk of erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved in the physical and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 785 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (quotation marks omitted)). Considering these three factors, the *Brown* court noted that advisory committees, appointed by the district court, had held public hearings at which attorneys could voice their opinions about the rule changes before the district court actually adopted the new rules, and, thus, the district court's eventual adoption of the rules did not violate procedural due process.

[T]he Committees' "notice and comment" procedures were elaborate and fair. Balancing the plaintiffs' loss against the significant governmental (and consumer) interest in maintaining minimum standards of advocacy and improving the quality of the attorneys practicing before the district court, we hold that the plaintiffs received notice reasonably calculated to [apprise] them of the pendency of the action and an adequate opportunity to be heard.

*Id.* at 786.

■ Similar to the district court's action in *Brown,* this court's amendment of RGCR 11 in the instant case constituted quasi-legislative rulemaking rather than an adjudication, because: (1) the amendment to RGCR 11 was generalized in nature (i.e., the repeal of temporary court reporter certification applied to all court reporters rather than to any specific individuals); (2) in the process of amending RGCR 11, this court and the Board considered general facts rather than a particular set of disputed facts; and (3) the amendment of RGCR 11 determined a general policy issue about certification, rather than a specific legal dispute between particular parties.

■ With respect to prior notice, quasi-legislative decisions that affect large numbers of unspecified persons and are not directed at specific individuals do not give rise to the constitutional procedural due process requirement of individual prior notice. Although the act of amending RGCR 11 was quasi-legislative in character, Appellants were nevertheless fortunate enough to receive individual prior notice regarding the proposed repeal of temporary court reporter certification. On January 17, 1992, Board Chairman Fazio sent a letter to all T–CSRs

and CSRs in Hawai'i and informed them that the Board was considering amending 1990 RGCR 11(b) to: (i) eliminate the unlimited temporary court reporter certificate provision and (ii) install a four-certificate limit.[13] Chairman Fazio ended his letter by calling for "input on this very important subject." As we have noted, on May 20, 1992, Board Chairman Fazio sent a letter to all T–CSRs and CSRs in Hawai'i and advised them that the Board would "hold a public forum meeting to solicit comments on changes related to T–CSR certificates pursuant to Rule 11 of the Rules Governing Court Reporting" on July 10, 1992. *See supra* at 335, 922 P.2d at 948. Appellants received notice reasonably calculated, under the circumstances, to apprise them of the pendency of the repeal of temporary court reporter certification and were afforded an opportunity to present their objections. *Klinger,* 64 Haw. at 10, 635 P.2d at 942.

With respect to Appellants' right to be heard, as noted above, on July 10, 1992, the Board held a public forum meeting about the proposed repeal of temporary court reporter certification by amending RGCR 11. At the meeting, Appellant Herrick spoke out against the abolition of temporary court reporter certificates. Thus, assuming, arguendo, that Appellants had a vested liberty or property interest in the temporary court reporter certificates, the risk of erroneous deprivation by amending RGCR 11 was virtually nonexistent, because this court's amendment of RGCR 11 was a quasi-legislative act that uniformly applied to all court reporters in general. Appellants were treated no differently than any other court reporters. The public forum meeting gave the general public, including Appellants, a fair opportunity to voice opposition to the repeal of temporary court reporter certification. And although the public forum meeting did not constitute a

contested case hearing, a "contested case hearing is not essential to the guarantee of due process." *Medeiros v. Hawaii County Planning Comm'n,* 8 Haw.App. 183, 195, 797 P.2d 59, 65, (1990). In light of the fact that amending RGCR 11 constituted quasi-legislative rulemaking, rather than an adjudication of the rights of specific court reporters, any additional procedures such as individual contested case hearings were unnecessary and would have imposed unjustifiable fiscal and administrative burdens on the state. The state's interest in repealing temporary court reporter certification for all court reporters without holding individual contested case hearings outweighed any risk of erroneously depriving Appellants of the temporary court reporter certificates. Under these circumstances, we conclude that amending RGCR 11 did not deprive the Appellants of procedural due process.

### 2. *Substantive Due Process— Facial Challenge*

▮▮▮▮ "[A] substantive due process challenge may be either 'facial' or 'as applied.'" *Restigouche, Inc. v. Town of Jupiter,* 59 F.3d 1208, 1211 n. 1 (11th Cir.1995). Appellants assert that the current RGCR 11 facially violates substantive due process because the repeal of temporary court reporter certification is an unjustifiable limitation on their "fundamental right" to work as court reporters. "A fundamental constitutional right is one that is 'explicitly or implicitly guaranteed by the Constitution.'" *Estate of Coates v. Pacific Engineering, a Div. of Pacific Lining Co., Inc.,* 71 Haw. 358, 363, 791 P.2d 1257, 1260 (1990) (citation omitted). "This court will employ strict scrutiny ... where a suspect classification or fundamental interest is at stake." *Nagle v. Board of Education,* 63 Haw. 389, 404, 629 P.2d 109, 119 (1981).

---

**13.** The January 17, 1992 letter reads as follows: Dear T–CSR and CSR member:

The Hawaii Board of Certified Shorthand Reporters met on January 10, 1992 and decided to revisit the most controversial rule in court reporting—RGCR 11(b). The Board is considering the language change that: "No more than four (4) temporary certificates shall be issued by the Board to any one individual." The Board realizes the need for a flexible T–CSR rule and we will participate in speed building and workshops for T–CSRs.

We must all realize the need for excellence in our profession. An open-ended CSR rule will only be abused and diminish our standing in the legal community.

The Board would appreciate your input on this very important subject. Please direct your correspondence to the undersigned.

However, court reporters do not constitute a suspect class [14] of people. *Ross v. Peters*, 846 P.2d 1107, 1115 (Okla.1993). While we have acknowledged "the liberty of [a] citizen to choose and pursue an innocent occupation[,]" *Territory v. Kraft*, 33 Haw. 397, 408 (1935), "this court has already held that the right to work is not fundamental and that, therefore, only the rational basis test applies." *Nagle*, 63 Haw. at 399, 629 P.2d at 116 (citations omitted); *accord, Daoang v. Department of Education*, 63 Haw. 501, 504, 630 P.2d 629, 631 (1981); *Maeda v. Amemiya*, 60 Haw. 662, 669, 594 P.2d 136, 141 (1979); *Ross*, 846 P.2d at 1115 ("[T]he cluster of interests in state licensing of professionals is not per se viewed as a fundamental right which demands strict scrutiny.").

"Under the rational basis test, we inquire as to whether a statute [15] rationally furthers a legitimate state interest." *Estate of Coates v. Pacific Engineering, a Div. of Pacific Lining Co., Inc.*, 71 Haw. 358, 364, 791 P.2d 1257, 1260 (1990). It has long been recognized that the state has a legitimate interest in protecting the general welfare of the public by regulating admission into professions:

It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex and condition. This right may in many respects be considered as a distinguishing feature in our republican institutions. Here all vocations are open to every one on like conditions. All may be pursued as sources of livelihood, some requiring years of study and great learning for their successful prosecution. The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot be arbitrarily taken from them, any more than their real or personal property can be thus taken. But there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society. The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud. As one means to this end it has been the practice of different States, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, their possession being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the State as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation.

*Dent v. West Virginia*, 129 U.S. 114, 121–22, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1888) (upholding a statute requiring physicians in West Virginia to obtain a certificate from the State Board of Health). Thus, "[t]he state may exclude from practice those who are not

---

14. Suspect classes of people are those who are "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973).

15. When interpreting rules promulgated by the court, principles of statutory construction apply. *State v. Baron*, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995); *State v. Lau*, 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995).

qualified to hold a professional license." *Brown*, 774 F.2d at 782; *see also Dent*, 129 U.S. at 122–23, 9 S.Ct. at 233–34.

For example, we have held that attorneys, as officers of the court, have "no constitutional right to practice law in the State of Hawai'i" without first satisfying the license requirements of the State Bar of Hawai'i. *In re Avery*, 44 Haw. 597, 600, 358 P.2d 709, 711 (1961). Even where an applicant for admission into the State Bar of Hawai'i had already accumulated fifty years of experience as a licensed attorney in the State of Massachusetts, we held that he could not practice law in Hawai'i without first passing the examination for the State Bar of Hawai'i, because "the right to practice law is not a natural or constitutional right, but a privilege or franchise the exercise of which is conditioned upon the prescribed requirements of each jurisdiction." *Id.* at 598, 358 P.2d at 710. Thus, we held that bar examination requirements "constitute a valid exercise of the State's police power and prerogative in pursuance of its objective of maintaining the legal profession on a high level." *Id.*

Likewise, court reporters are officers of the court. *Cf. Honolulu Advertiser, Inc. v. Takao*, 59 Haw. 237, 239, 580 P.2d 58, 61 (1978).[16] As officers of the court, court reporters have no constitutional right to practice their profession in Hawai'i courts without first satisfying the certification requirements of the State of Hawai'i, because, like attorneys, court reporters have a substantial impact on the general welfare of the public. The duties of court reporters require great skill and cannot be performed by one who does not possess special qualifications. It is vitally important to our legal system that court reporters accurately record testimony in court proceedings and depositions, because the lives, rights, and liberties of citizens are at stake in criminal and civil proceedings. Thus, the state has a legitimate interest in improving the competency of court reporting in Hawai'i, safeguarding the integrity of the certification process, ensuring the orderly and efficient administration of justice, and protecting the integrity of transcripts offered into evidence in Hawai'i courts. *Cf. Ross*, 846 P.2d at 1117 ("It is evident that the concern for qualified court reporting in the judicial system is a legitimate state purpose."). The only remaining question is whether the current RGCR 11 rationally furthers this legitimate state interest.

In *Ross*, the Oklahoma Supreme Court held that a statutory amendment, which prevented the State Board of Examiners of Official Shorthand Reporters from certifying "stenomask" reporters,[17] rationally furthered the legitimate state interest in assuring the competency of court reporters. *Id.* at 1118. Pursuant to the statutory amendment, the Oklahoma State Board of Examiners of Official Shorthand Reporters had refused to enroll several stenomask reporters as certified shorthand reporters, and as a result, the stenomask reporters filed a declaratory action against the State Board of Examiners claiming, inter alia, that the certification statute violated their due process rights. Acknowledging that the statutory amendment adversely impacted the stenomask reporters' opportunities to work as court reporters, the *Ross* court nevertheless had "no difficulty in concluding that [the statutory amendment] me[t] minimal rationality and d[id] not contravene the mandate of substantive due process." *Id.* at 1118.

---

16. *See also Seidler v. Municipal Court*, 12 Cal. App.4th 1229, 16 Cal.Rptr.2d 90, 93 (1993); *Conklin v. Rogers*, 98 A.D.2d 918, 471 N.Y.S.2d 356, 357 (N.Y.App.Div.1983); *Wirges v. Arrington*, 239 Ark. 1047, 396 S.W.2d 292, 294 n. 5 (1965); *Peacock v. State*, 154 So.2d 856, 857 (Fla.Dist.Ct.App.1963); *In re Godden*, 158 Neb. 246, 63 N.W.2d 151, 154 (1954); *Louisville & N.R. Co. v. Paul's Administrator*, 314 Ky. 473, 235 S.W.2d 787, 791 (1950); *State v. Industrial Commission*, 252 Wis. 204, 31 N.W.2d 196, 197 (1948); *Powers v. Isley*, 66 Ariz. 94, 183 P.2d 880, 886 (1947).

17. According to the National Stenomask Verbatim Reporters' Association, "The stenomask [method] consists of a low impedance microphone encased in a sound-proof mask that the reporter lifts to his face. A tape recorder is connected to the stenomask and a verbatim voice record of the proceedings is made." *Ross*, 846 P.2d at 1109 n. 1 (internal quotation marks omitted).

Part and parcel of ensuring [competent court reporting] is the preservation of a system that can deliver highly skilled court reporters. It cannot be contended with any show of reason that, in furthering this legitimate objective, the legislature overstepped its constitutional authority by prescribing the qualifications for enrollment as a certified shorthand reporter. All that is required to satisfy minimal rationality is that "the legislature could conceivably have believed that such a ... [statutory classification] would serve the legitimate purpose" of ensuring the fitness of applicants for the profession of court reporting for the district courts.

*Id.* at 1117.

Similarly, it may be that this court's amendment of RGCR 11 and repeal of temporary court reporter certification has adversely impacted Appellants' opportunities to obtain jobs as court reporters in Hawai'i. But when a government entity prescribes certification requirements for a profession, all that is required to satisfy the rational basis standard is that the government entity could conceivably have believed that the requirements would serve the legitimate state purpose of ensuring the competency of the applicants for the profession. It is obviously "conceivable" that requiring court reporters to pass the court reporter certification examination could further the legitimate state interest of improving the competency of court reporting in Hawai'i, safeguarding the integrity of the certification process, ensuring the orderly and efficient administration of justice, and protecting the integrity of transcripts offered into evidence in Hawai'i courts. Current RGCR 11 appears to be a reasonable means for doing so, especially because it gave all T–CSRs a one-year grace period in which to pass the certification examination and provided that "speed building seminars and practice dictation tapes/audio w[ould] be available three months prior to all tests until November 1993." Under the current RGCR 11, Appellants have been and are free to take the certification examination as many times as necessary to obtain certification.

It is irrelevant that Appellants had already worked as court reporters pursuant to temporary court reporter certificates prior to this court's amendment of RGCR 11. "To protect society against unqualified licensed professionals, the State may require a licensed professional to satisfy additional conditions after the license is granted." *Brown,* 774 F.2d at 782–83; *Dent,* 129 U.S. at 123, 9 S.Ct. at 233–34. "[L]egislation prescribing qualifications for those who engage in activities that require a license in no manner impairs any vested rights of persons who were engaged in the activities before the effective date of the legislation." 51 Am. Jur.2d *Licenses and Permits* § 14 at 20 (1970) (citing, among other cases, *Collins v. Texas,* 223 U.S. 288, 297, 32 S.Ct. 286, 289, 56 L.Ed. 439 (1912) (regarding licensing requirements for osteopathy) and *Reetz v. Michigan,* 188 U.S. 505, 510, 23 S.Ct. 390, 392, 47 L.Ed. 563 (1903) (regarding certificates of registration for persons practicing medicine and surgery) (footnotes omitted)). "The decision to apply [additional] conditions [for licensing] retroactively, like a decision to adopt retroactive economic legislation, satisfies due process if it is justified by a rational legislative purpose." *Brown,* 774 F.2d at 783. As stated, current RGCR 11 is justified by a rational purpose.

We conclude that the repeal of temporary court reporter certification by amendment of RGCR 11 rationally furthered the legitimate state interest in improving the competency of court reporting in Hawai'i, safeguarding the integrity of the certification process, ensuring the orderly and efficient administration of justice, and protecting the integrity of transcripts offered into evidence in Hawai'i courts. Accordingly, current RGCR 11 does not facially violate the right to substantive due process.

### 3. *Substantive Due Process—"As Applied"*

Appellants also assert that the Board's decision to recommend the repeal of temporary court reporter certification, as applied to Appellants, was "arbitrary insofar as it disregarded the legal or constitutional rights of applicants and failed to consider what would be equitable under the circumstances

such as the grandfathering of existing T–CSRs until passage of the RPR exam." Appellants' Opening Brief at 30–31. Appellants' assertion resembles a "facial challenge" more than an "as applied challenge," because Appellants are complaining about a quasi-legislative rulemaking process that led up to the amendment of RGCR 11, rather than the Board's actual application of RGCR 11 to Appellants.

■■■■■ However, the Board did apply current RGCR 11 directly to Appellants when the Board denied Appellants' request for a special exemption from the current RGCR 11 or for continued temporary court reporter certification. Due process includes a substantive component that guards against arbitrary and capricious government action, even when the government takes that action pursuant to a facially constitutional law. To establish an "as applied" violation of substantive due process, an aggrieved person must prove that the government's action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. *Dodd v. Hood River County,* 59 F.3d 852, 864 (9th Cir.1995) (affirming a trial court's ruling that a county did not act arbitrarily and capriciously by denying appellants' applications for building permits).

For example, even where a licensing scheme for barbers did not facially violate due process, the United States Court of Appeals for the Sixth Circuit nevertheless held that members of the Tennessee Board of Barber Examiners (Board) violated due process by applying the licensing scheme in an arbitrary manner to prevent two applicants from obtaining a license to operate a barbershop. *Wilkerson v. Johnson,* 699 F.2d 325 (1983). When the applicants tried to open a barbershop directly next to their already existing beauty salon, the Board members told the applicants that they could not obtain a license for the barbershop unless they would build two separate bathrooms and a partition between the dual barbershop/beauty salon. *Id.* at 327. However, no Tennessee regulation required a dual barbershop/beauty salon to have two separate bathrooms and a partition. *Id.* at 327 n. 1. Furthermore, one of the Board members was biased because he owned a competing barbershop directly next-door to the applicants' dual barbershop/beauty salon. *Id.* at 328.

When governmental institutions regulate careers or occupations in the public interest through the licensing process, their definitions of rights in a license or other statutory entitlement may give rise to competition rights and constraints that define property interests. The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias as well as gross governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process.

*Id.* at 328 (citations omitted). Considering the nature and seriousness of the Board's infringement upon the applicants, as well as the weakness of the Board's justification for it, the Sixth Circuit held that the Board violated the applicants' right to substantive due process:

In the instant case the infringement caused by the defendant officials was harassment and delay in allowing plaintiffs to pursue their occupation. They brought about the delay by enforcing a costly rule known to be invalid. The jury found that they did so in order to deter plaintiffs from opening their shop next to [a Board member]'s barber shop. No arguments are made in defense of the [nonexistent] rule's enforcement. The infringement is sufficiently serious and the reasons given in justification for the delay so lacking in substance as to constitute a due process violation of plaintiffs' "liberty" interests.

*Id.* at 328.

However, it is not necessarily arbitrary and capricious for an administrative agency to uniformly apply a new licensing requirement to applicants, even when the new licensing requirement contains a grandfather clause exempting present and past license holders from having to satisfy the new licensing requirement. *Pierce v. Alabama Board of Optometry,* 835 F.Supp. 593, 601 (M.D.Ala. 1993). In *Pierce,* the state of Alabama modi-

fied its laws governing the practice of optometry by changing the minimum education requirement from a three-year to a four-year school curriculum. *Id.* at 596. "The law, however, contained a 'grandfather clause,' which provided that those seeking the required yearly renewal of their licenses under the new law would not have to meet the new curriculum requirement if they [already] possessed valid regular licenses under the old law." *Id.* Having completed only a three-year curriculum, the plaintiff in *Pierce* had been a faculty member at a school of optometry and had held a "temporary license," which "authorized a faculty member to teach and to practice optometry under the auspices of the school; the license, however, was valid and subject to yearly renewal only so long as the recipient was a member of the school's faculty." *Id.* When the plaintiff subsequently attempted to obtain a regular license pursuant to the grandfather clause, the Alabama Board of Optometry found that, because the plaintiff did not already possess a regular license, he was not eligible to obtain a regular license pursuant to the grandfather clause. *Id.* at 596–97. In response, the plaintiff argued "that, although the grandfather clause may not be arbitrary on its face, it has been applied [by the Board of Optometry] in an arbitrary manner to him." *Id.* at 600. However, the *Pierce* court found no evidence that the Board of Optometry was issuing temporary licenses and regular licenses in an arbitrary manner; the Board of Optometry applied the new four-year curriculum requirement and the grandfather clause in a uniform and consistent manner to all new applicants. *Id.* at 601. Thus, the *Pierce* court concluded that the Board of Optometry's application of the grandfather clause to the plaintiff did not violate his right to substantive due process. *Id.*

Likewise, the State of Hawai'i did not violate substantive due process by requiring an applicant for a Hawaiian surveyor's license to have working knowledge of certain Hawaiian language terms. *Bradford v. State of Hawai'i,* 846 F.Supp. 1411 (D.Haw.1994). In *Bradford,* a licensing scheme required all Hawaiian surveyors to have working knowledge of certain Hawaiian language terms, and as a result, an examinee who was not familiar with the Hawaiian language failed the licensing examination. Because the *Bradford* court found no evidence that the State had arbitrarily and capriciously applied the language requirement to the examinee, the *Bradford* court "grant[ed] defendants summary judgment on plaintiff's substantive due process claims." *Id.* at 1423.

> Plaintiff cannot pursue the surveying profession in Hawaii without first receiving a license to do so; hence, Hawaii's licensing scheme is an undisputed obstacle to plaintiff's career as surveyor in Hawaii. However, ... Hawaii must regulate and license its surveyors to protect the public from incompetent practitioners. The need to assure the public of competent surveyors clearly outweighs plaintiff's interest in pursuing his profession, unregulated, in Hawaii. Thus, the licensing scheme itself does not violate plaintiff's liberty interest.
>
> More importantly, there is no evidence that the State arbitrarily and capriciously denied plaintiff ... his license.... He simply failed to pass two independent portions of the exam which all potential surveyors must pass in order to receive a license to practice.

*Id.* at 1422.

▮ Similarly in the instant case, there is no evidence that the Board acted arbitrarily and capriciously when it denied the Appellants' request for a special exemption from the current RGCR 11 or for continued temporary court reporter certification. When current RGCR 11 went into effect on November 10, 1992, Appellants still had not passed the certification examination. The Appellants continued to take the certification examination, but both Appellants failed the May and November tests and, therefore, did not meet the November 1993 deadline of the current RGCR 11. In accordance with the current RGCR 11, the Board informed Appellants Irish and Herrick that their temporary court reporter certificates lapsed on January 6, 1994. There is no evidence that the Board harassed Appellants with nonexistent rules or treated Appellants differently from other court reporters. The Board did not unfairly single them out for unfavorable treatment.

The Board did not apply the current RGCR 11 to Appellants in a manner that was arbitrary and unreasonable, or in a manner that had no substantial relation to the public health, safety, morals, or general welfare. Accordingly, we conclude that the Board did not apply its rules and regulations to Appellants in any manner that violated substantive due process.

### D. *Special Exemption*

Lastly, Appellants argue that "[b]ased on the circumstances presented by this appeal, ... an order [should] be issued allowing their transcriptions of in-state jobs to be accepted for filing with the state court clerks for only so long as they take each successive RPR exam until passage." Based on the foregoing analysis, we disagree.

### V.  *CONCLUSION*

For the reasons stated above, we affirm the decision of the Board of Certified Short-hand Reporters.