Sally A. MATSUDA, et al., Plaintiffs,

v.

**CITY AND COUNTY OF HONOLULU,
Defendant.**

**No. CV 0500125DAELEK.**

United States District Court,
D. Hawai'i.

July 19, 2005.

David A. Nakashima, Lerisa L. Heroldt, Alston Hunt Floyd & Ing, Honolulu, HI, for Sally A. Matsuda, Trustee of the Sally A. Matsuda Self–Trusteed Trust dated October 15, 1993, Ralph James Mitchell, Lucy Elizabeth Mitchell, Noosha Birgitta Fesharaki, Earl Lewis Kidder, Jeenie Marie Kidder, James Thomas Rapisarda, Jonathan Von Brana, Thomas Leonard Preston, Loren Herbert Hohman, II, Herbert Caplan, Co–Trustee of the Herbert Caplan and Elena V. Pecile Trust dated March 27, 2003, Elena Virginia Pecile, Co–Trustee of the Herbert Caplan and Elena V. Pecile Trust dated March 27, 2003, Wilma I. Parker, Trustee of the Wilma I. Parker Trust dated March 16, 1989, as amended, Troy Fontaine Williams, Larry Weisner, Delores Weisner, Richard Joseph Jaeger, III, Marianne Marion Jaeger, Richard Erland Johnson, William Garrett Fuson, Jr, Kang Yuk Lee, Suk Ja Lee, Claude R. Rothe, Trustee of the Claude R. Rothe Living Trust dated March 26, 1998, Alvin R. Olson, Trustee under Alvin R. Olson Revocable Trust Agreement dated July 20, 1998, Natalia Indrasari, Warren M. Sweet, Trustee of the Sweet Joint Revocable Trust dated June 21, 1991, Rheba Alice Sweet, Trustee of the Sweet Joint Revocable

Trust dated June 21, 1991, Robert Joseph Mehring, Ayumi Watanabe Mehring, Arnold Theodore Flemmings, Trustee of the Arnold Theodore Flemmings and Mariana Flemmings Revocable Living Trust dated December 6, 1999, Mariana Flemmings, Co–Trustee of the Arnold Theodore Flemmings and Mariana Flemmings Revocable Living Trust dated December 6, 1999, Melvin Takeo Matsuoka, Delwin Byron Schneider, Trustee under the Delwin Byron Schneider and Katherine Louise Schneider Family Trust dated October 14, 1996, Katherine Louise Schneider, Trustee under the Delwin Byron Schneider and Katherine Louise Schneider Family Trust dated October 14, 1996, Ronald Dean Silverman, Farhad F. Simyar, Soussan Simyar, Frank Winston Kern, plaintiffs.

Winston K.Q. Wong, Paul M. Iguchi, Don S. Kitaoka, Derek T. Mayeshiro, Office of Corporation Counsel–Honolulu, Honolulu, HI, for City and County of Honolulu, municipal corporation of the State of Hawaii, defendant.

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, Chief Judge.

The Court heard Plaintiffs' Motion on June 22, 2005. David A. Nakashima, Esq., and Larisa L. Heroldt, Esq., appeared at the hearing on behalf of Plaintiffs; Deputies Corporation Counsel Don S. Kitaoka, Derek T. Mayeshiro, and Paul M. Iguchi, appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs' Motion for Summary Judgment.

### BACKGROUND

Plaintiffs, who hold leasehold interests in residential condominiums at the Discovery Bay condominium complex, have sued Defendant, the City and County of Honolulu ("the City"), seeking to invalidate a city ordinance that Plaintiffs claim violates the Due Process Clause and the Contracts Clause of the United States Constitution.

Plaintiffs each hold legal title to their respective residential condominium units in the Discovery Bay condominium complex, which consists of several leasehold condominium units located at 1778 Ala Moana Boulevard, Honolulu, Hawaii. Plaintiffs individually entered into written Leased Fee Interest Purchase Contracts with the City. Plaintiffs each paid the City $1,000 in consideration, and in return, the City agreed as follows:

> The City shall convey to the Buyer by Quitclaim Deed (a) all of its right, title and interest in (i) the Unit and all limited common elements appurtenant to the Unit, and (ii) the undivided percentage interest in the real property and other common elements upon which the Unit is situated and (b) all of its right, title and interest in Buyer's Condominium Conveyance Document ("Condominium Conveyance Document") of the Unit and the real property ("Real Property").

(See, e.g., Pl. Memo. in Supp., Ex. 1 at 1.) These actions were to be undertaken after the City acquired the property through its power of eminent domain, pursuant to Chapter 38 of the Revised Ordinances of Honolulu 1990 and the Rules for Residential Condominium, Cooperative and Planned Development Leasehold Conversion.

On August 3, 2004, the director of the Honolulu Department of Community Services determined that the public purpose of Chapter 38 would be effectuated by the acquisition of the leased fee interests in Discovery Bay, either by exercise of the power of eminent domain, or by purchase under the threat of eminent domain. (See, e.g., Pl. Memo. in Supp., Ex. 28.) On November 24, the director of DCS desig-

nated Plaintiffs' leased fee interests in the real property and other common elements at Discovery Bay, for acquisition through the exercise of the power of eminent domain pursuant to R.O.H. § 38–2.2 ; and Rules § 2–11. *Id.*

Plaintiffs assert that, accordingly, Plaintiffs were determined by DCS to have met all the qualifications stated in Chapter 38 entitling them to purchase the leased fee interest in the real property appurtenant to their respective residential condominium units in Discovery Bay. In late October and early November of 2004, Plaintiffs received written notification of their final approval to proceed with the process provided in Chapter 38 for leasehold conversion. (*See, e.g.,* Pl. Memo. in Supp., Ex. 29.)

On August 2, 2004, Honolulu City Council Member Mike Gabbard introduced City Council Bill 04–53 ("Bill 53"), which was written to repeal Chapter 38. In section 1 of the bill, the City Council issued the following findings:

> The council understands that the use of eminent domain should not be taken lightly and must be justified by a valid public purpose. Section 3–110 of the Revised Charter of the City and County of Honolulu ("Charter") states: "The council shall by resolution determine and declare the necessity of taking property for public purposes, describing the property and stating the uses to which it shall be devoted." Article I, Section 20 of the Hawaii Constitution also states that private property shall not be taken for public use without just compensation. Thus, the exercise of eminent domain must be supported by (1) a valid public purpose and (2) just compensation. Under Hawaii law, the council has the discretion whether or not to exercise the power of eminent domain. The city has always taken the position that the council has the ultimate power to condemn.

The public purposes of Chapter 38 were set forth in detail in Ordinance 91–95. According to Ordinance 91–95, the purpose of Chapter 38 was to provide affordable housing and to strengthen the economy through fee ownership. Ordinance 91–95 lists "runaway land prices," "shortage of fee simple residential condominiums," "artificial inflation of land values," "lessees forced to accept long-term leases ... which contains terms and conditions which are financially disadvantageous to them," "land values, artificially inflated by concentrated or single ownership," and "potential for economic instability and disruption on Oahu" as public purpose furthered by Chapter 38.

The council finds that mandatory conversion of multi-family residential leaseholds under Chapter 38 is no longer needed to assuage the social and economic problems mentioned in Ordinance 91–95 and, therefore, no longer advances a public purpose for which the city should exercise its extraordinary powers of condemnation. The social and economic problems listed as the public purposes furthered by Chapter 38 do not exist today to the same extent as they may have existed in 1991.

The council further finds that a lessee purchasing a residential leasehold unit knew or should have known about the negative aspects of the lease prior to the purchase. Since 1990, such a lessee should have received a copy of the underlying lease. Since 1991, the lessee should have received a simplified disclosure of the salient terms of the lease agreement, including but not limited to, the remaining term of the lease, the rent renegotiation dates, the potential for significant increases in renegotiated rents, and the surrender clause.

In addition, it is a fundamental principle that the power to enact necessarily

implies the power to repeal and one legislature cannot be limited or bound by the actions of a previous one. Thus, the council has the right to make an independent decision whether to repeal the law entirely.

Finally, "there is no vested right in a public law which is not in the nature of a private grant, and however beneficial a statute may be to a particular person or however injuriously the repeal may affect him, the legislature has the right to abrogate it.... No person has a vested interest in any law or legislative policy which entitles him to have it remain unaltered for his benefit." *In re Application of Herrick*, 82 Haw. 329, 338, 922 P.2d 942 (1996).

Based on the forgoing findings, the council believes and concludes that Chapter 38 no longer serves a public purpose and should be repealed.

(Def. Memo. in Opp'n, Ex. B at 1.)

Bill 53 provided a savings clause, however, for those lessee applicants who were already involved in the condemnation process under Chapter 38 when Bill 53 became law. The clause provides:

Section 3. (a) This ordinance shall not affect any eminent domain proceeding for the acquisition of units validly designated in projects, the condemnation of which units was approved by the council by resolution before the effective date of this ordinance. Such an eminent domain proceeding may be instituted or, if already instituted, continued after the effective date of this ordinance in accordance with Chapter 38, ROH, as existing on the day before the effective date of this ordinance.

(Def. Memo. in Opp'n, Ex. B at 2.) The City Council's approval is the determinative event on which permission to continue the leasehold condominium conversion process under Chapter 38 hinges.

On November 10, 2004, City Council Member Donovan Dela Cruz introduced Resolution 04–341, which sought council authorization for the corporation council to initiate an eminent domain proceeding on behalf of Plaintiffs at Discovery Bay. (Pl. Memo. In Supp., Ex. 60.) Resolution 04–341 was referred to the council's Executive Matters Committee, which deferred consideration of the resolution pending the passage of Bill 53. On January 26, 2005, the Council voted 6–3 to pass Bill 53 into law.

Plaintiffs maintain that the City Council considered and rejected less drastic alternatives to Bill 53 in the months preceding the adoption of the Bill. Indeed, Plaintiffs note that City Council Member Charles Djou introduced a modified version of Bill 53 that would have preserved Plaintiffs' contracts while still effecting the repeal of Chapter 38. This version would have exempted a development that was validly designated before the effective date of Bill 53, and for which a sufficient number of lessees applied and executed leased fee purchase contracts with the City before the effective date of Bill 53. Djou's version, however, was rejected by a 6–3 vote on January 13, 2004.

Bill 53 became effective as Ordinance 05–001, and Chapter 38 was repealed, on February 7, 2005. Under the savings provision of Ordinance 05–001, only those lessee applicants who received council approval before February 7, 2005, are permitted to complete the process of leasehold condominium conversion under the provisions of Chapter 38. Plaintiffs, the lessee applicants at Discovery Bay, were unable to receive council approval prior to February 7, and therefore they are unable under Ordinance 05–001 to complete their leasehold conversion.

Plaintiffs filed suit against the City on February 25, 2005, alleging that the repeal

of Chapter 38 is unconstitutional, because: Bill 53 constitutes an impairment of the obligation of contracts in violation of Article 1, Section 10; Bill 53 constitutes a bill of attainder in violation of Article 1, Section 10; Bill 53 deprives Plaintiffs of property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiffs seek declaratory relief in the form of an order declaring the ordinance to be null and void as a violation of the Contracts Clause, the Due Process Clause, and 42 U.S.C. § 1983, and injunctive relief enjoining the implementation of the ordinance.

Plaintiffs filed a Motion for a Preliminary Injunction on March 11, 2005.

On April 4, the Court heard Plaintiffs' motion for a preliminary injunction. At the hearing, the Court denied Plaintiffs' motion, explaining that the lack of irreparable harm precluded the grant of preliminary injunctive relief. Rather, the Court explained that motions for summary judgment were the proper form for Plaintiffs' and Defendant's arguments, and ordered Plaintiffs to file a motion for summary judgment.

Plaintiffs filed their motion on April 25, 2005. On May 9, Defendant filed its Opposition. On May 16, Plaintiffs filed their reply in support of the motion.

On June 17, 2005, the parties filed a stipulation to consolidate the instant case with *Hsiung, et al., v. City and County of Honolulu*, CV. NO. 05–00104.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* at 323, 106 S.Ct. 2548.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

A material fact is one that may affect the decision, so that the finding of that fact is relevant and necessary to the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party. *Id.* The evidence submitted by the nonmovant, in opposition to a motion for summary judgment, "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255, 106 S.Ct. 2505. In ruling on a motion for

summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law. *Id.* at 254, 106 S.Ct. 2505. The court must assess the adequacy of the nonmovant's response and must determine whether the showing the nonmovant asserts it will make at trial would be sufficient to carry its burden of proof. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

At the summary judgment stage, this Court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: whether the evidence presents a sufficient disagreement to require submission to a jury, or is so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

## DISCUSSION

As the Court expressed at the hearing on this motion, the Court sees before it a sad, unnecessary case. It is not the place of the Court to challenge the actions taken by the City Council in terms of wisdom or public policy, and this order will not purport to do so. However, the fair and wise decision, from the perspective of the City, would have been to draft the repeal of Chapter 38 so as to allow those leaseholders such as Plaintiffs, who have begun in good faith the process of conversion, to be grandfathered in. The integrity of the City Council members who reached this decision has never been doubted; however, the people of the City and County of Honolulu are ill-served by the avoidable waste of taxpayers' money that has resulted from this decision. Nonetheless, the duty of the Court is to uphold the Constitution and the republican form of government of the United States. The Court therefore addresses Plaintiffs' claims as follows.

■ Plaintiffs assert that the repeal of Chapter 38 constitutes a violation of the Contracts Clause, because it effects a substantial impairment of Plaintiffs' contracts with the City. However, Defendant argues that it is absolved from any liability based on an exception to the requirements of the Contracts Clause that has been carved out by the courts and referred to as the "reserved powers" doctrine. The reserved powers doctrine provides that "a state government may not contract away 'an essential attribute of its sovereignty.'" *United States v. Winstar Corp.,* 518 U.S. 839, 888, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

■ Under the reserved powers doctrine, when a state impairs the obligation of its own contract, the initial inquiry concerns the ability of the state to enter into an agreement that limits its power to act in the future. *U.S. Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1, 23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). This inquiry requires a determination as to the state's power to create irrevocable contract rights, rather than an inquiry into the purpose or reasonableness of the subsequent impairment. *Id.* "In short, the Contract Clause does not require a State to adhere to a contract that surrenders an essential attribute of its sovereignty." *Id.*

■ Applying this standard, the United State Supreme Court has repeatedly held for more than a century that the Contracts Clause cannot be used to bind the state to a contract that purports to restrict its power of eminent domain. *See, e.g., West River Bridge Co. v. Dix,* 47 U.S. 507, 6 How. 507, 12 L.Ed. 535 (1848) (holding that the Contracts Clause does not prevent a State from exercising the power of eminent domain) ("This power, denominated the *eminent domain* of the State, is, as its name imports, paramount to all private rights vested under the government, and these last are, by necessary implication,

held in subordination to this power, and must yield in every instance to its proper exercise."); *U.S. Trust Co. of N.Y.*, 431 U.S. at 24, n. 21, 97 S.Ct. 1505 ("[T]he doctrine that a State cannot contract away the power of eminent domain has been established since *West River Bridge Co. v. Dix....* "); *Winstar Corp.*, 518 U.S. at 874, 116 S.Ct. 2432 (citing *West River Bridge* for the proposition that "a state's contracts do not surrender its eminent domain power"). Indeed, the power of eminent domain, along with the police power, is often cited as the classic example of an "essential attribute of sovereignty." *U.S. Trust Co. of New York*, 431 U.S. at 23–24, 97 S.Ct. 1505.

Indeed, the federal courts' answer to the argument presented by Plaintiffs was already a foregone conclusion almost a century ago, as the Supreme Court explained:

> There can be now, in view of the many decisions of this court on the subject, no room for challenging the general proposition that the states cannot by virtue of the contract clause be held to have divested themselves by contract of the right to exert their governmental authority in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the preservation of society or to secure the performance of essential governmental duties .... [I]t is equally true that the previous decisions of this court leave no doubt that the right of government to exercise its power of eminent domain upon just compensation for a public purpose comes within this general doctrine.

*Contributors to Pennsylvania Hosp. v. City of Pa.*, 245 U.S. 20, 23–24, 38 S.Ct. 35, 62 L.Ed. 124 (1917) (internal citations omitted). The Supreme Court's long line of precedent on the subject also shows that the reserved powers doctrine applies equally to protect the right of eminent domain from contractual infringement when that right has been delegated to a municipality. *See, e.g., Contributors to Pa. Hosp.*, 245 U.S. at 23–24, 38 S.Ct. 35 (applying the reserved powers doctrine to the exercise of eminent domain by a municipality). In the instant case, the state legislature delegated its power of eminent domain to the City and County of Honolulu in Hawaii Revised Statute § 46–1.5(6).

In recent years, the Supreme Court has taken no action that would undermine this longstanding authority. Rather, the Court's latest decisions regarding the power of eminent domain have only bolstered the "longstanding policy of deference to legislative judgments in this field." *See, e.g., Kelo v. City of New London,* —— U.S. ——, 125 S.Ct. 2655, 2663, —— L.Ed.2d —— (2005). In *Kelo*, the United States Supreme Court was faced with a factually distinguishable scenario from the one at hand; the petitioners in that case were landowners who sought to challenge a city's exercise of eminent domain power over their property, arguing that the takings were not for public use. *Kelo*, 125 S.Ct. at 2658–2661. However, in affirming the city's finding of public purpose that underlaid its exercise of eminent domain, the Supreme Court once again evidenced the wide berth afforded to states and municipalities in the exercise of that particular sovereign power. Reiterating its pronouncement in *Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 242, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the Court in *Kelo* explained: "When the legislature's purpose is legitimate, and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings ... are not to be carried out in the federal courts." *Kelo*, 125 S.Ct. at 2667.

Plaintiffs simply have not brought forth any argument that would

persuade the Court that this clear Supreme Court precedent is somehow inapplicable to the facts of this case. Plaintiffs assert that their contracts do not limit the right of eminent domain, but rather Chapter 38 does. Alternatively, Plaintiffs argue that the aforementioned cases only stand for the proposition that a contract cannot prevent the exercise of eminent domain; contracts purporting to require the exercise of the eminent domain power are therefore acceptable under the reserved powers doctrine, Plaintiffs contend. These arguments are illusory. The sovereign right of eminent domain necessarily consists of the discretion to exercise that power in the manner the sovereign deems to be in the public's best interest. A contract requiring the sovereign to exercise the power is just as limiting as a contract prohibiting it from doing so. Although factually distinguishable, the Supreme Court's recent decision in *Kelo* may be construed as support for the proposition that a legislature's power of eminent domain necessarily encompasses the ability to both exercise the right and to limit the right. *Kelo,* 125 S.Ct. at 2668 ("In affirming the City's authority to take petitioners' properties, .... [w]e emphasize that nothing in our opinion precludes any State from placing further restrictions on its exercise of the takings power."). Thus, the Court finds that the Contracts Clause cannot be used under these circumstances to invalidate the repeal of Chapter 38, because the reserved powers doctrine reserves essential attributes of sovereignty such as the power of eminent domain to the discretion of the states.

▆▆▆ Because the Court finds that the reserved powers doctrine applies to create an exception to the Contract Clause analysis, the Court does not consider the parties' arguments regarding the unmistakability doctrine. The so-called unmistakability doctrine provides that a sovereign will only be held to have surrendered its sovereign powers if the contractual limitation explicitly states as much. "Without regard to its source, sovereign power, even when unexercised is an enduring presence that governs all contracts subject to the sovereign's jurisdiction, and will remain intact unless surrendered in *unmistakable* terms." *Bowen v. Pub. Agencies Opposed to Soc. Sec. Entrapment,* 477 U.S. 41, 52, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986) (emphasis added). As noted above, however, the Supreme Court has also indicated that, under the reserved powers doctrine, a sovereign can never be contractually bound to surrender "an essential attribute of its sovereignty." *United States Trust Co. of N.Y.,* 431 U.S. at 23. The Supreme Court explained the two doctrines, which emerged in the mid-Nineteenth Century, as follows:

> [T]wo distinct limitations developed to protect state regulatory powers. One came to be known as the 'reserved powers' doctrine, which held that certain substantive powers of sovereignty could not be contracted away. *See West River Bridge Co. v. Dix,* 6 How. 507, 12 L.Ed. 535 (1848) (holding that a State's contracts do not surrender its eminent domain power). The other, which surfaced somewhat earlier in *Providence Bank v. Billings,* 29 U.S. 514, 4 Pet. 514, 7 L.Ed. 939 (1830), and *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge,* 11 Pet. 420, 9 L.Ed. 773 (1837), was a canon of construction disfavoring implied governmental obligations in public contracts. Under this rule that "[a]ll public grants are strictly construed," we have insisted that "[n]othing can be taken against the State by presumption or inference," and that "neither the right of taxation, nor any other power of sovereignty, will be held ... to have been surrendered, unless such surrender has been expressed in terms too plain to be mistaken."

*Winstar Corp.*, 518 U.S. at 874–75, 116 S.Ct. 2432. The Court finds that the only reasonable way to read the two doctrines together is to hold that the unmistakability doctrine applies to require any contractual limitations on a sovereign's powers to be drafted in unmistakable terms, but that under the reserved powers doctrine, a subset of these sovereign powers are so essential that they may never be contractually limited, regardless of the language used. *See also Winstar Corp.*, 518 U.S. at 889 n. 34, 116 S.Ct. 2432 (addressing action against the federal government rather than a state, but discussing at length the doctrine of unmistakability and indicating there are " 'core governmental powers' that cannot be surrendered under the reserved powers doctrine"). As such, given that the Court has found that the sovereign's discretion to use the eminent domain power is protected under the reserved powers doctrine, the doctrine of unmistakability is simply inapplicable.

Moreover, because the Court concludes that the reserved powers doctrine operates to preclude any contractual limitation on the City's power of eminent domain, the Court declines to consider the arguments raised by the parties regarding whether a valid contract was formed.

### CONCLUSION

The Court therefore finds that the City Council acted within its appropriate constitutional and legal limits in repealing Chapter 38. The Plaintiffs' Motion for Summary Judgment is hereby DENIED. The Defendant is directed to file a motion for summary judgment consistent with this opinion.

IT IS SO ORDERED.